3   328
52  1304

3   328
110 1036

3   328
112 719
114 212

3   328
115 102

3   328
f119 714
120 45

## VAUGHAN et al. v. CHRISTINE et al.

A sale made without the formalities prescribed by law, by a tutor, of the immovables of his pupil, is absolutely null; but may be ratified by the minor, after majority, expressly or by implication.

All absolute nullities resulting from defects of form are embraced within the general provisions of art. 3507 of the Civil Code.

Absolute nullities are of two kinds: those resulting from stipulations derogating from the force of laws made for the preservation of public order or good morals, and those established for the interest of individuals. The former are not susceptible of ratification, and the prescription of five years, under art. 3507 of the Code, is inapplicable to them; but if, by subsequent dispositions of law or by the succession of time, such stipulations cease to be illegal, they may from that time be ratified, and become subject to the prescription of art. 3507. Thus the partition of a succession made before the succession is open, may become valid by ratification, or by lapse of time, after the opening of the succession. But in relation to absolute nullities established in the interest of individuals, the rule is, as to onerous contracts, without exception, that the party in whose favor they are established may ratify the contracts, either expressly or impliedly.

In all cases of executed contracts susceptible of tacit ratification, a presumption of ratification juris et de jure, results from silence and inaction during the time fixed for prescription.

Where one who had caused herself to be appointed a tutrix, takes possession, by virtue of her appointment, of slaves belonging to her pupil, converts their labor to her own use, and when called upon to account denies the existence of the trust, contests the title of her pupil to the slaves, and claims as her own the fruits of their labor, she will not be allowed commissions on the amount recovered from her for the hire of the slaves, which cannot be considered, within the meaning of art. 342 of the Civil Code, as revenues accruing to the minors through her care and labor.

APPEAL from the District Court of East Baton Rouge, Burk, J. Stirling, Collins and A. M. Dunn, for the plaintiff, as to the plea of prescription cited C. C. 3507. 3 Rob. 316. G. S. Lacey, for the defendants and intervenor, appellants. The judgment of the court was pronounced by

ROST, J. The plaintiff sues her tutrix, and the husband of the latter, as co-tutor, to compel them to render an account of the tutorship, and to deliver certain slaves belonging to her, together with the fruits produced by them, pending her minority. The defendants filed an exception, which was properly overruled, and subsequently answered to the merits, specially denying the tutorship, and the possession of any property belonging to the plaintiff, and

averring that she has no title to the slaves claimed by her. They further claimed in reconvention the sum of $5,117 12, according to an account annexed to their answer, alleged to be due them partly by the plaintiff, and partly by her deceased mother, whose succession she has accepted.

On the day on which this answer was filed, *Frances B. Cooney*, a sister of the plaintiff's mother, intervened, alleging that the plaintiff set up title to and sought to recover the slaves mentioned in her petition in right of her mother, *Mary Mathilda Vaughan*, deceased, whose only heir she is; that the said *Mary Mathilda Vaughan* and the intervenor were both daughters of *John Cooney*, also deceased; that the said *Cooney* left at his death five children; that an informal partition in writing of the property left by him was subsequently made, between the surviving widow and the heirs under the authorization of the Court of Probates, and that the negroes claimed were assigned by this partition to the plaintiff's mother, who took possession of them at the time. The intervenor alleges eight grounds of nullity, arising from defects of form, in the act of partition, and the judicial proceedings had in relation thereto. She prays that the partition may be declared null and void, and that the slaves claimed by the plaintiff be restored to the succession of her father, to be hereafter divided and disposed of, according to law. The plaintiff, in her answer to the petition of intervention, pleaded the ratification of the partition by the intervenor, and the prescription of five years, under art. 3507 of the Civil Code.

The judge of the first instance held that he had no jurisdiction of the intervention, *ratione materiæ.* We are not apprized of the existence of any law limiting his jurisdiction in cases like this. We consider the intervenor to have been properly before the court, and the plea of prescription filed against her claim will be first noticed.

Her counsel does not deny that more than five years had elapsed from the time she attained the age of majority to the filing of her petition in intervention, and is willing to concede that, if the informalities alleged against the partition were merely relative nullities, the prescription pleaded would bar her action. But he contends that the nullities alleged are absolute nullities, to which the short prescription does not apply. He cites, amongst other authorities in support of his position, a passage from Toullier, in these words: "La vente sans formalités, faite par le tuteur, des immeubles de son pupille, est absolûment nulle." Vol. 8, no. 508, Paris ed. Such is and has ever been the law; but the counsel overlooks the distinction that there are absolute nullities of different kinds, and that all absolute nullities arising from defects of form come within the general provisions of art. 3507.

The distinction which exists in relation to absolute nullities is broad and easily defined. If the contract is tainted with a nullity resting on motives of public order or having its origin in the respect due to good morals, if it be one of the conventions prohibited by art. 11 of the Code, it is an absolute nullity, to which the law perpetually resists; it is not susceptible of ratification, and the prescription of five years is inapplicable to it. A contract by the father or the husband to surrender the paternal or the marital power—an obligation to pay money for the commission of a crime, or for doing an immoral act—the partition of a succession made before the succession is open, are instances of such conventions; and even in those cases, if, by subsequent dispositions of law or by the succession of time, the obligation ceases to be illicit, it may, from that time be ratified, and become subject to the short prescription. Thus, for instance, the partition of a succession made before the succession was open, may become

42

valid by ratification, or by lapse of time, after the opening of the succession.

The other class of absolute nullities are those established for the interest of individuals, and in relation to these the rule in onerous contracts is, without exception, that the party in whose favor they are established may render valid the acts in which they are found, by his ratification express or implied. Toullier cites as one of the absolute nullities of this class, the very case relied on by the intervenor's counsel—the sale of the immovables of the minor by his tutor. That sale, he says, is null—absolutely null; and yet the minor after he becomes of age may ratify it, not only expressly but tacitly.

"En un mot," continues the same author, "nous ne connaissons point de nullité fondée sur l'intérêt privé qui ne puisse être réparée par la ratification expresse ou tacite. Le vice le plus absolu des conventions, le défaut ou la non-existence du consentément, peut néanmoins être réparé par la ratification, soit expresse, soit tacite." 8 Toullier, nos. 515, 518. 7 Toullier, nos. 553, 559.

In all executed contracts, which under this view of the law may be tacitly ratified, a presumption *juris et de jure* of ratification, results from silence and inaction during the time fixed for prescription. The informalities alleged by the intervenor in this case have been cured by lapse of time, and she has no claim to the slaves in controversy. The plea of ratification appears to us to be also fully sustained. But it is unnecessary to go at large into an examination of it.

The judgment of the court below has given the plaintiff the slaves claimed, and the sum of $973 76, the balance of the hire of said slaves, after deducting therefrom so much of the indebtedness of the plaintiff and her mother to the defendants, as has been legally proved. The judge has given us the estimates upon which the judgment rests, and we are satisfied that he has done justice between the parties.

The defendant alleges that commissions should have been allowed to her on the income of the plaintiff. The tutor is bound to administer the property of the minor honestly for his use, and to credit him annually with the revenues it produces. When he does this, he is entitled to a commission of ten per cent on those revenues, as a remuneration for his care and labor. C. C. art. 342. In this case, the defendant caused herself to be appointed tutrix of the plaintiff, took possession of the slaves claimed, by virtue of that appointment, converted their labor to her own use and benefit as long as she could, and, when called upon to account, denied the existence of the trust which she had sworn faithfully to discharge, contested the title of her ward to the property, claimed as her own the fruits it had produced, and set up a claim in reconvention, more than half of which is utterly unfounded. She has placed herself before the court not as an administrator, but as a spoliator. The amount recovered from her is not revenue accruing to the minor through her care and labor. Under this state of facts, the court below did not err in refusing to allow the commissions claimed. This case materially differs from that of *Aubic* v. *Gil,* cited in argument. 7 Rob. 50.    *Judgment affirmed.*