*668
 
 ROGERS, Justice.
 

 Mrs. Mamie Jemison Henderson, widow of W. K. Henderson, Sr., died, testate, at .her domicile in Caddo Parish, Louisiana, on January 9, 1939, leaving three children, v'iz., W. K. Henderson, Jr., Mrs. May Henderson Leonard, and Mrs. Viva Henderson Dunkin. The will of Mrs. Henderson, which is in the olographic form, after providing for certain special legacies to her three children and other persons, contains the following recitals:
 

 “I have heretofore made gifts to my daughters May Henderson Leonard and Viva Dunkin of equal amounts for which they shall not be required to account or collate and I have also made gifts to my son William Kennon Henderson, of amounts and value equal to those to my said daughters and for which he shall not be required to account and in addition to the said gifts to my said son, I have also made additional gifts to him aggregating more than one hundred and sixty thousand dollars (160,-000.00) which said additional gifts and sum given to my said son is more than his share of my estate.”
 

 Attached to the will are three codicils, also in olographic form, the first codicil, which is dated March 13, 1934, reads as follows: “The Fifty Thousand Dollars I loaned my son Will Henderson was out of my half of estate.” The second codicil, which is dated April' 5, 1936, -reads as follows: “I have advanced to my son more than his part of estate so he cannot share in my estate.”
 

 ■ Together with its- codicils, the will was probated by order of court on January 16, 1939, and Mrs. May H. Leonard qualified as testamentary executrix. An inventory and appraisement under order of court was made on January 24, 1939, in which the value of the decedent’s estate was fixed at $226,387.04.
 

 On January 28, 1939, W. K. Henderson, Jr., brought this suit against his sisters, Mrs. May H. Leonard, individually and as executrix, and Mrs. Viva H. Dunkin, individually, to set aside the will of their mother so far as it excluded him from participating in her estate, and to have himself recognized as the owner of a third interest therein; and, also to obtain an order of court requiring the defendants to account for and collate alleged advances in excess of $100,000 received by them from their mother.
 

 The defendants, answering the suit, asserted the validity of their mother’s will and averred that plaintiff had received in gifts and advances
 
 more
 
 than his share of their mother’s succession; in the alternative, defendants asked that plaintiff be ordered to collate all the debts due and advances received by him, and, in the further alternative, defendants asked that if it should be found plaintiff was entitled to any interest in his mother’s estate, that the interest be limited to one-third of two-thirds of the estate, less the amount of debts due his mother and the value of the special legacies made to him in his mother’s will.
 

 On the trial of the case, plaintiff took the position that he was not liable on notes which he had given his mother in connection with the purchase of certain shares
 
 *670
 
 of stock of the V. K. Henderson Iron Works & Supply Company, and, further, that he was not liable on a note for $50,'-000 which he had given his mother in connection with advances made by her for the use of the W. K. Henderson Iron Works & Supply Company. Defendants filed pleas of prescription and estoppel to plaintiff’s claims, setting up that plaintiff had acquired all the capital stock of the Henderson Iron Works & Supply Company by virtue of his purchase; that he was estopped to dispute the sale and validity of the notes, and that his attack thereon was barred by the prescription of five and ten years as provided by Articles 2221, 3542 and 3544 of the Civil Code.
 

 After holding the case under advisement for several months, the judge of the district court, for oral reasons assigned, rendered a judgment in favor of the defendants, rejecting plaintiff’s demands and dismissing his suit and claim at his cost. From this judgment, plaintiff has- appealed.
 

 The record discloses that. plaintiff gave his mother ten note.s of $30,435.75 each, in part payment of the purchase price of 1503 shares of the capital stock of the W. K. Henderson Iron Works &'Supply Company; one note for $50,000 representing money used by ' the company; and two notes, one for .$13,945.14, and the other for $5,852.56, representing past due interest payments on the above notes. These are the notes .for which plaintiff denies any liability. Plaintiff does not dispute his liability on a note for $1,500 given' to his mother on December 27, 1938, which was only a few days prior to her death. On the question of the plaintiff’s liability-on'the notes given by the plaintiff to his mother in part payment of the purchase price of the shares of stock of the W. K. Henderson Iron Works & Supply Company, the record shows the following facts: The capital stock of the W. K. Henderson Iron Works & Supply Company consisted of 3,000 shares. W. K. Henderson, Sr., gave his wife 250 shares and to his three children, W. K. Henderson, Jr., the plaintiff, Mrs. May H. Leonard, and Mrs. Viva H. Dunkin, the defendants, 449 shares each, to W. P. (Leonard and W. S. Dunkin, his sons-in-law, 50 shares each, and to Mrs. W. K. Henderson, Jr., 50 shares. There was therefore retained by W. K. Henderson, St., and left in his estate 1,253 shares.
 

 W. K. Henderson, Sr., died, testate, on August 20, 1918. His succession was opened under the number 24,279, in- the First District Court for the Parish of Caddo. The will of Mr. Henderson, which was dated April 6, 1918, after reciting that all the property belonged to the matrimonial community, made certain special legacies and then provided that “-everything else was to revert to his wife as long as she lives and then to be equally divided among my children.” He expressed the wish that his wife be elected president of the Iron Works with a salary of' at least $6,000 per year; that W. K. Henderson, Jr., should continue in his own business; that W. S. Dunkin and W. P. Leonard should continue to manage the Iron Works and that they consult with Mrs. Henderson' and W. K. Henderson,
 
 *672
 
 Jr., on any deal of importance. The will was probated by Mrs. Henderson contradictorily with her three children on September 6, 1918. On the same day the court confirmed Mrs. Henderson as testamentary executrix and ordered an inventory of the succession be taken.
 

 On the night of September 6, 1918 (the day the will was probated), a meeting was held at Mrs. Henderson’s residence. There were present at the meeting Mrs. Henderson, Mr. and-Mrs. Leonard, Mr. and Mrs. Dunkin, and plaintiff and his wife. At that meeting, plaintiff expressed a desire to purchase the stock of the W. K. Henderson Iron Works & Supply Company. After some discussion, plaintiff offered to buy all the stock on the basis of $270 a share. His offer was accepted. The next morning the transaction was closed at the Commercial National Bank in Shreveport, Louisiana. Plaintiff obtained from his mother 1,503 shares of stock (250 shares donated by her husband and 1,253 shares left in his estate). The total purchase price of this stock was $405,810.
 

 One-fourth of the. purchase price, or $101,452.50, was paid in cash and the balance was represented by plaintiff’s ten notes for $30,435.75 each, or a total of $304,357.50. At the same time and at the same price, plaintiff bought from his sisters, Mrs. Leonard and Mrs. Dunkin, 449 shares each, and from Mr. Dunkin and Mr. Leonard, 50 shares each. On January 2, 1919, a petition was filed in the succession proceedings of W. K. Henderson, Sr., by his surviving widow, as executrix and individually, and by W. K. Henderson, Jr., W. P. Leonard and his wife, Mrs. May Henderson Leonard, W. S. Dunkin and his wife, Mrs. Viva Henderson Dunkin, and Mrs. Mary Gillespie (a sister of W. K. Henderson, Sr., and a legatee under his will) for the homologation of the account of the executrix and for the approval of the distribution made by her. Article 2 of the petition shows that the executrix had distributed and delivered the property of the succession to the legatees, including the following:
 

 “To petitioners, W. K. Plenderson, Jr., Mrs. May Henderson Leonard and Mrs. Viva Henderson Dunkin, an undivided half interest in and to twelve hundred fifty-three (1253) shares of the Capital Stock of the W. K. Henderson Iron Works & Supply Company, Limited, subject to any sale that may have been made between the parties.”
 

 On January 18, 1919, a judgment was rendered homologating the account, approving the distribution, recognizing the petitioners as owners and sending them into possession of the properties respectively delivered to them.
 

 As a result of these transactions and proceedings, plaintiff became the sole owner of the stock of the W. K. Henderson Iron Works & Supply Company and acquired the full control of the corporation. Plaintiff became the president of the corporation and held that position until the company, according to his own testimony, “went on the rocks.” This occurred in November, 1929, when the company was placed in receivership. In 1934, a mort
 
 *674
 
 gage covering all of its property was foreclosed.
 

 Plaintiff himself filed a petition in voluntary bankruptcy in 1932. In his schedule of unsecured creditors he listed his mother, Mrs. W. K. Henderson, Sr., as the holder of two notes dated December 7, 1918, for $30,435.75 each; also as the holder of a note dated December 18, 1923, for $50,000, and a note dated December 17, 1928, for $11,946.45. The other notes involved in this suit were not listed by him. Plaintiff was discharged in bankruptcy on March 7, 1933.
 

 Plaintiff contends that he purchased the stock of the Iron Works from his mother in error, because she did" not own all the shares transferred to him. Plaintiff argues that the stock belonged to the matrimonial community existing between his mother and his father and therefore one-half of the stock belonged to the succession of his father; that his mother had been recognized as surviving widow and usufructuary and that she could not convey any title to the half interest in the stock belonging to her husband’s succession, or to his heirs.
 

 Plaintiff’s contention and argument overlook the proven facts in the case. These facts show that plaintiff was fully cognizant of the proceedings in his father’s succession; that he accepted service of the notice to probate the will; and that he was one of the petitioners for the homologation of the final account filed by his mother as testamentary executrix, which shows on its face the distribution to him and his two sisters of an undivided one-half interest in 1,253 shares of the capital stock of the W. K. Henderson Iron Works & Supply Co., “subject to any sale that may have been made between the parties.” The sale referred to in the proviso was clearly the one made to plaintiff, as that was the only sale made by the parties. This sale was clearly ratified, both judicially and extra-judicially, by the conduct of plaintiff’s mother, his sisters and himself. In the joint petition of plaintiff and the other parties, which was signed by all of them, and in the inventory in his father’s succession, the 1,253 shares were treated as being all the stock that belonged to the succession. The remaining shares of stock of the corporation were owned by the vendors individually, and all the parties acquiesced in the distribution of the stock that was inventoried and sold as belonging to the succession.
 

 Plaintiff says that he owned a one-sixth interest in the shares of stock that he purchased. In the brief filed on his behalf, the provisions of the Civil Code to the effect that the sale of a thing belonging to another person is null, áre referred to, and the case of Long v. Chailan, 187 La. 507, 175 So. 42, is cited. The quotation from the cited case, however, shows that such a sale is not null if the owner of the property ratifies it. In this case, thé owners of the shares of stock had ratified the sale, expressly, in their joint petition filed in the succession of W. K. Henderson, Sr., and again by their presence at the execution of the sale, and, impliedly, by their long continued assent and acquiescence thereto.
 

 
 *676
 
 Plaintiff’s mother enjoyed thq usufruct of the interest that plaintiff, as well as all the other vendors, had in the stock, and her usufruct, as shown by the record, was worth fifty-eight cents on the dollar. The naked ownership of plaintiff’s one-sixth interest in the stock was therefore of no avail to him. In addition to its ascertainable value, the stock possessed a value not susceptible of computation in money, because as owner and usufructuary, Mrs. Henderson was vested with full control of the corporation, which control she disposed of with the sale of the stock.
 

 According to the admissions in his own testimony, plaintiff bought all the stock belonging to Mrs. Henderson and the heirs. He was the moving party in the transaction. The purchase of the stock placed him in full control of the corporation and clothed him with every right and benefit he could have possibly expected from, any sale. Plaintiff’s title was good from the beginning, because all his co-heirs were present at the negotiations and at the execution of the sale itself. They would have been estopped then and they would be estopped now to question the transaction. All parties acquiesced, both actively and passively, in- the transaction and it is now too late to bring' up questions that were settled as far back as 1918.
 

 In Barnes v. Barnes, 155 La. 981, 99 So. 719, 722, this Court pointed out that absolute nullities resulting from stipulations derogating from the force of laws made for the preservation of public order or good morals are not susceptible of ratification, but absolute nullities established in the interest of individuals may be ratified either expressly or impliedly, and that there was no exception to this rule. The Court then said: “In all cases of executed contracts susceptible of tacit ratification, a presumption of ratification juris et de jure results . from silence and inaction during the time fixed for prescription.” The Barnes Case was cited and its doctrine approved in Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366.
 

 Plaintiff’s mother and sisters sold him a prosperous and going concern; he became its president, and received a salary as such. The corporation made money and its capital stock was raised to a million dollars. Plaintiff obtained every right and advantage which he expected to flow from the sale, that is to say, an unqualified and absolute control of the corporation. The fact that the corporation failed under his management does not change the situation. The vendors turned over to plaintiff a solvent corporation but they did not guarantee its continued solvency. They can not be held responsible for the failure of the corporation while under plaintiff’s control, Plaintiff has never brought a suit to annul the transaction and apparently has never questioned its legality until he challenged it in this suit. Plaintiff has not offered to restore, and in fact, can not restore either the status quo or the benefits he received.
 

 In light of the facts established by the record, plaintiff’s contention that he did not receive any consideration for one-half of the notes originally given his mother is not tenable. To hold otherwise would enable plaintiff, contrary to all equitable con
 
 *678
 
 siderations, to retain’ the property that he purchased from his mother without payment of the purchase price.
 

 During the period elapsing between September 7, 1918, and October 23, 1925, plaintiff paid his mother $228,478.75, and plaintiff now claims that, conceding the sale of the stock to him was an advancement from his mother’s succession, he has overpaid the advancement by $25,573.75. We do not find any merit in plaintiff’s claim.
 

 The $228,478.75 that plaintiff paid his mother over the period of years is made up of eight items. The first of these is an item of $101,452.50, which represents the cash portion of the purchase price of the 1,-503, shares of stock. Three of the items, for $31,957.54, $33,479.32, and $36,522.96, or a total of $101,959.82, represents the payment by plaintiff of three of the original ten notes and the interest thereon. The other four items for $4,959, $7,608.93, $7,862.50, and $5,000, or a total of $25,066.43, represent the payment by plaintiff of interest on his notes during the years 1921, 1923, 1924, and 1925.
 

 Plaintiff’s mother declares in her will that she had made additional gifts to plaintiff, aggregating more than $160,000. While this declaration is disputed by plaintiff, the preponderance of the evidence shows that it is true. Plaintiff was in financial difficulties at the time, and- at the instance of his sister, Mrs. May Henderson Leonard, plaintiff’s mother cancelled certain notes given by plaintiff. The notes thus can-celled consisted of five of the original notes covering the credit portion of the purchase price of the shares of stock,,each for the sum of $30,435.75, amounting in the aggregate to the sum of $152,178.75, and an interest 'note for $5,852.31. In addition to cancelling these notes, the amount of which was $158,031.06, plaintiff’s mother allowed plaintiff a credit of $1,968.69 on the interest note of $13,941.14. The principal of these six notes, together with the credit allowed on the other note, made up the total of $160,000 of plaintiff’s debt that was can-celled by his mother and to which she referred in her will.
 

 On October 18, 1923, plaintiff gave his mother his note for $50,000, endorsed by the W. K. Henderson Iron Works & Supply Company. Plaintiff contends that this note was given his mother at her request in order that she might have something to show for the $’50,000 which she had deposited with the corporation on October 6,1920. Plaintiff claims that he did not receive any benefit from the alleged deposit. Plaintiff’s claim is not well founded.
 

 In the first codicil to her will, dated March 13, 1934, Mrs. Henderson declares that she had loaned plaintiff $50,000 out of her one-half of the estate. She did not mention a deposit, nor did she refer to the corporation.. A similiar controversy arose and was disposed of in the. Succession of Cooney, 181 La. 7, 158 So. 572, 574. In that case, Cooney, the president and sole owner of the National Oil Works of Louisiana, Inc., gave his wife the notes of the oil company, some of which were endorsed by himself, to evidence the receipt from her of certain money to be used for the benefit of the corporation. Later, Cooney signed a notarial act acknowledging the indebted
 
 *680
 
 ness. In holding that the indebtedness was personal to Cooney and was not due by the oil company, this Court said:
 

 ‘‘The- corporation was owned and managed by Cooney. To all intents and purposes, Cooney was the corporation. * * * So far as the money obtained by Cooney from Mrs. Cooney benefited the oil company, it benefited Cooney himself. And the inescapable fact is that Cooney believed he, and not the corporation, owed the money to his wife, because he signed a solemn notarial act acknowledging that indebtedness. It was only when he was called upon to pay the mortgage which he had expressly agreed in the act to pay that he set up, plainly as an afterthought, the plea the act was executed in error.”
 

 The language quoted from the Cooney case is peculiarly applicable to the situation presented in this case. After the purchase of its stock from his mother and the other heirs, the W. K. Henderson Iron Works & Supply Company was owned entirely by plaintiff. He became its president and sole manager. The Iron Works became a one-man corporation. To all intents and purposes, plaintiff was the corporation. The act of plaintiff’s mother in advancing the $50,000 to the Iron Works is not inconsistent with the act of plaintiff in assuming liability therefor. So far. as the money obtained by plaintiff from his mother benefited his corporation, it benefited him. And the inescapable fact is that plaintiff believed he, and not his corporation, owed the money to his mother, because he signed a promissory note acknowledging and promising to discharge the indebtedness. It was only when, in defense to this suit, plaintiff was called upon to account for the indebtedness represented by his note that plaintiff denied liability and set up the claim that he signed the note merely to please his mother.
 

 Plaintiff contends that the defendants should be made to collate certain gifts received by them from their mother. In her will, Mrs. Henderson declares that she had made gifts to the defendants of equal amounts for which they should not be required to acknowledge or collate, and that she had also made gifts to plaintiff of amounts and of a value equal to those made to her daughters and for which he should not be required to account. The evidence in the record shows that these gifts made by Mrs. Henderson to her three children, including Christmas and birthday presents, were substantially equal in value. After writing her will, Mrs. Henderson purchased certain annuity policies in the Prudential Life Insurance Company, for which she paid $25,000, and in the Equitable Life Assurance Society, for which she paid $16,000. During her lifetime, Mrs. Henderson received- from these policies the sum of $5,478.27, leaving a balance due of $35,521.-73, expended by her for annuities payable to her daughters. Plaintiff claims that $15,-240.57 of this amount was for the benefit of Mrs. Leonard, and $20,257.52 of this amount was for the benefit of Mrs. Dunkin. But in making this claim, plaintiff overlooks the fact that these amounts do not represent the true value of the annuities, which is not definitely fixed in the record.
 

 As the beneficiaries of four life insurance policies issued by as many different com
 
 *682
 
 pañíes in the name of Mrs. Henderson, each of the defendants received $9,614.55. Plaintiff claims that the defendants should collate these amounts; and that, in addition, Mrs. Leonard should collate the value of the home place on Fairfield Avenue in the City of Shreveport which plaintiff asserts is worth $32,000, but which was sold to Mrs. Leonard by, her mother on February 5, 1936, for a purported cash consideration of $16,-000.
 

 Our conclusion is that plaintiff can not take anything as the result of this suit. This is so even if the estate of his mother should be increased by the collations that plaintiff demands the defendant should be required to make.
 

 It is undisputed that Mrs. Henderson’s usufruct of the stock sold to plaintiff had a value of fifty-eight cents on the dollar, and that the stock was worth $270 a share. It can not be disputed that plaintiff, omitting his indebtedness on the note of $1,500, which offsets to some extent the gifts made by Mrs. Henderson to the defendants subsequent to the making of her will, owed his mother $282,847.95 which he did not, or was not, required to repay. This figure is made up of $213,050.25 representing seven unpaid notes of $30,433.75 each, given by plaintiff in part payment of his purchase of the shares of stock of the Henderson Iron Works, the note of $50.000 representing the money loaned plaintiff for the use of the corporation, and the two notes of $5,852.56 and $13,945.14 representing the unpaid accrued interest on the other notes.
 

 Assuming that the marital community existing between W. 'K. Henderson, Sr., and his widow, Mrs. Mamie Jemison Henderson, owned the 1,503 shares of stock (including' the 250 shares donated to Mrs. Henderson by her husband), which were conveyed by Mrs. Henderson to the plaintiff, they were held by Mrs. Henderson as the owner of an undivided half interest and as usufructuary of the other undivided half interest. The 751% shares, owned in full by Mrs. Henderson, were worth, at $270 a share, the sum of $202,905, and the usufruct owned by Mrs. Henderson of the remaining 751% shares was worth, at $156 a share, the sum of $39,228.30. Plaintiff’s one-third interest in 751% shares, or in 250% full shares, at $270 a share, was worth $67,635, less $39,228.30, the value of the usufruct owned by his mother, or $28,-406.70. If plaintiff should be credited with the sum of $28,406.70 on his indebtedness of $284,847.95 due to the estate of his moth er, he would still owe the estate $255,941.25. There could be no substantial change in the final result if the value of the estate should be increased by the collations which plaintiff claims the defendants should be required to make. If there should be added to the sum of $226,387.04, which is the value of the property of the succession of Mrs. Henderson as shown by the inventory, the amount of $54,750, charged by plaintiff to the defendants in connection with the life insurance and annuity transactions, and $32,000, the value placed by plaintiff on the Fairfield Avenue property acquired by Mrs. Leonard, the total value of the estate of Mrs. Henderson would be $313,137.04, of which amount plaintiff would be entitled to receive $104,379.29 for his one-third interest in the estate, leaving still due the
 
 *684
 
 estate by plaintiff the sum of $180,468.66. If there should be added to the $313,137.04 representing the value of the estate of Mrs. Henderson, including the collations claimed by plaintiff from the defendants,. the amount of $284,347.95 due by plaintiff himself, the total value of the estate to be distributed among the heirs would be $595,885.83, of which amount plaintiff woud be entitled to receive $198,628.61 for his one-third interest, leaving still due to the estate by plaintiff the sum of $85,718.43.
 

 Plaintiff can not be relieved of his obligation to account to his coheirs for the money and other advantages he obtained from his mother. His obligation to do this is a matter of simple justice. Plaintiff has already received more than his share of his mother’s estate, and to allow him to participate in the distribution of what is left of the estate, free of all liability for what he has received, would work a palpable injustice upon his coheirs. Its effect would be to place plaintiff in the position of a favored heir of his mother, although he is not given that status under her will. Having already received more than his share, plaintiff, if relieved of his obligation to account to his coheirs, would obtain a larger proportion of his mother’s estate than she could have legally given him under her will. Defendants are without any remedy to enforce the collection of the notes given by plaintiff to his mother. They can not sue plaintiff on the notes, because he was, upon his own application, adjudged a bankrupt. The only way open to defendants to defeat plaintiff’s action is to ask the court to enforce the provisions of their mother’s will. We think they are clearly entitled to this.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., does not take part.
 

 PONDER, J., absent.