**52 So.2d 247**

**FRIED et al. v. BRADLEY et al.**

**No. 39335.**

May 29, 1950.

On Rehearing Feb. 12, 1951.

Wilkinson, Lewis & Wilkinson, Shreveport, Warren Hunt, Rayville, B. Reagan McLemore, Longview, Tex., for defendants-appellants.

Vollor, Teller & Biedenharn, Vicksburg, Miss., Theus, Grisham, Davis & Leigh, Monroe, for plaintiffs.

FOURNET, Chief Justice.

This petitory action was instituted by the heirs of Sol Fried and of his wife, Rosa Beer Fried, or their legal representatives, against the heirs of John Bradley, Sr., and their mineral lessees and assignees, claiming title to and seeking to be placed in possession of 40 acres of land in Richland Parish, Louisiana, described as the Northeast Quarter of the Northeast Quarter, Section 36, Township 17 North, Range 8 East, acquired by Sol Fried, a resident of Vicksburg, Mississippi, while he was married to and living with Rosa Fried, and which had been sold on December 17, 1917, during the lifetime of the latter, by the four eldest sons of Sol Fried, who were the executors of his estate, to John Bradley, Sr.

The defendants filed (1) an exception of no cause or right of action, leveled at the claim of the three plaintiffs who signed the deed and at the claim of the sole heir and legal representative of the fourth executor, now deceased; (2) a plea of prescription of ten years' acquirendi causa, under Article 3478 of the Civil Code; (3) pleas of five and ten years liberative prescription under Articles 3542 and 2221, respectively, of the Civil Code; and (4) an alternative plea of estoppel, and a further alternative plea of laches and estoppel.

The learned judge of the lower court overruled the plea of prescription of ten years acquirendi causa, holding that the deed was an absolute nullity; he also overruled the plea of estoppel; and while he did not expressly overrule the plea of liberative prescription, he impliedly did so, since judgment was rendered as prayed for in favor of the four plaintiffs who were not parties to the deed and they were recognized as owners of an undivided one-half interest in and to the property, with reservation of their rights to sue for an accounting of any oils or other minerals produced from the land, as well as to sue for rents and revenues. As to the plaintiffs who, as executors, signed the deed, they were held bound by their acts and their claim was dismissed.

All defendants have appealed, and an appeal was also taken by the four plaintiffs whose demands were rejected. The remaining four plaintiffs have answered the appeal and asked that the judgment be amended so as to include the cancellation not only of the executors' deed above referred to, but of various other instruments affecting the title to the property.

The plaintiffs' action is based primarily on the nullity of the deed by the four named executors of Sol Fried, who had qualified as such in the Chancery Court of

Warren County, Mississippi, but had not qualified as executors in the State of Louisiana, nor had any of the other formalities been followed as required by the laws of this State in the sale of property belonging to a succession. They contend that the vendee was neither a good faith purchaser nor did he hold a title translative of ownership, and therefore the deed will not support the prescription of ten years acquirendi causa; they further contend that inasmuch as the deed was and is an absolute nullity, the defendants are not protected by any prescription liberandi causa; and they assert that the deed does not bind the signers thereof in their personal capacities or estop them to claim their individual interest in the property, either then vested or thereafter acquired. As to the non-signers, the further contention is advanced that they were totally ignorant of any assets in Louisiana, and therefore cannot be held to have ratified the sale.

Sol Fried was, during his lifetime, a resident of Vicksburg (Warren County), Mississippi, where he was successfully engaged in the wholesale grocery business and as a cotton factor. On March 14, 1906, he acquired the property here involved by deed from C. L. Mixon for a recited consideration of $408 (the record disclosing that the land was taken in payment of a debt due by Mixon, who owned and operated a store in the vicinity of the land), and thereafter rented it to tenant farmers through Mixon. Upon the death of Fried on October 3, 1915, there survived his wife, Rosa Beer, and nine children, the issue of the marriage; namely Louis, Jacob, Marie, Mrs. Lilly Fried Karpe, Charles, Mrs. Ruby Fried Gundersheimer, Marcus, David B., and Ernest S. By last will and testament, after making numerous specific cash bequests (one to his wife as trustee for his daughter, Marie, an incompetent), and specifying that his wife was to receive all proceeds from insurance policies as well as his jewelry and all the furniture and other personal property in the family residence, Fried bequeathed the residue of his estate to his above-named children, with the exception of Marie for whom separate provision had been made, and directed his executors to wind up the business of Sol Fried & Co. within a year (allowing an additional six months if, in their discretion, it were necessary), giving the executors the right to purchase said business with the consent of all the others. He designated his wife to be testamentary guardian of his two minor sons, David (aged 18 years) and Ernest (aged 15 years), without bond, giving her the full power and control of said estates, with the right to sell or in any manner deal therewith according to her best judgment, without the requirement of reporting her actions to any court. He named his four eldest sons (Louis, Jacob, Charles and Marcus) executors of his estate, without the necessity of furnishing bond, and relieved them also of the requirement that they report

to any court their actions as such. The will was duly admitted to probate in Warren County, Mississippi, and letters testamentary issued to the above-named four sons as executors.

It appears from the record that the decedent left an estate of considerable size, consisting (in addition to the business) of some real property and movables (stocks and bonds) located in Mississippi, but only the one piece of property here in controversy within Louisiana. The building in which the business of the decedent had been conducted was sold, as well as other real estate in Vicksburg. Without instituting ancillary mortuary proceedings in Richland Parish, Louisiana, Jacob Fried, one of the executors, offered by telephone conversation to sell the Louisiana property to George Koutezky, a resident of Delhi, Richland Parish, at a price of $25 per acre; and Koutezky, not being interested, mentioned the matter to his employer, John Bradley, who authorized Koutezky to make an offer of $20 per acre. Jacob Fried then made a counter-offer of $22.50 per acre, which was accepted, and Koutezky, who acted as agent for Bradley in these telephone negotiations, told Jacob Fried "to have his attorney prepare the deed and draw on Bradley Brothers through the Macon Ridge National Bank of Delhi." This procedure was followed and the deed was forwarded with draft attached. The said deed, dated December 17, 1917, and executed before a notary public, recited that Louis I. Fried, J. M. Fried, M. F. Fried and Charles Fried, bargained, sold and delivered the property to John Bradley for $900 cash, and contained the statement that they were acting as executors under the last will and testament of Sol Fried, deceased. This deed was duly recorded in Richland Parish, Louisiana. It appears that Bradley immediately took possession of the property as owner, and he (after his death, his heirs) remained in the undisturbed possession as the undisputed owner thereof until this suit was filed, some 29 years later.

Fourteen days after the execution of the above deed, that is, on December 31, 1917, Rosa Beer Fried, decedent's surviving wife, died intestate at Vicksburg, and her succession was duly opened and administered upon in Chancery Court of Warren County, Mississippi. According to inventories appearing in these proceedings the assets of the decedent, which amounted to about $40,000, consisted entirely of movables (stocks, notes, cash, jewelry, etc.). A division of these items was made among her heirs and on their joint petition was approved by the court; and subsequently, in proceedings carried on contradictorily with all the heirs, upon representation of the administrator, Marcus Fried, that a division of all the assets had been made, the proceedings were terminated (January 5, 1920) and the administrator discharged.

In July, 1921, the four executors of the estate of Sol Fried were joined by the

remaining heirs in petitioning the Chancery Court, Warren County, Mississippi, reciting that there were no debts against the estate, that the executors had fully administered thereon, that the special bequests had been paid, that the minors had reached majority and that a full account had been made by their guardian, and that the estate of Rosa Fried had been fully administered upon by that court. This petition, duly signed and sworn to by all petitioners and treated as a first and final account, was approved on July 7, 1921, and the executors were discharged from further liability. By stipulation appearing in the record it is admitted by the plaintiffs that the consideration of $900 received for the land was placed by the executors in the corpus of the estate of Sol Fried, and that they have made a full, complete and satisfactory distribution of the estate assets.

In the course of time oil was discovered in Richland Parish and in November, 1944, an option to lease given by the Bradley heirs (John Bradley, Sr., having died in the interim) was taken up by F. D. G. Park, one of the defendants herein. In the latter part of 1945, when preparations for drilling on the land were in progress, Park went to Vicksburg at the instance of his attorney to cure the apparent defect in the title. A disclaimer was prepared for the signature of the Fried heirs by their attorneys, who were handling the estate of Sol Fried when the property was sold and prepared the deed here under attack, who also handled the estate of Rosa Fried, and have continued to represent the plaintiff members of the family until this suit was filed (plaintiffs are being represented here by other counsel). The said disclaimer, however, was not signed by the heirs, as recommended by their attorneys; but instead, following the successful drilling and completion of a well on the property in the early part of 1946, the heirs instituted ancillary proceedings in the District Court of Richland Parish, Louisiana, wherein the three remaining executors (Jacob, Marcus and Charles Fried) qualified under the will of their late father, Sol Fried, and were appointed testamentary executors; and acting in their capacity as executors of the estate of their father, on August 8, 1946, executed a deed before a notary public in Mississippi wherein they sought "in accordance with the terms of the will of Sol Fried" to transfer to themselves individually and to the other testamentary heirs of Sol Fried, each in the proportion of ⅛th of an undivided half interest in the property. Simultaneously, the succession of Rosa Fried was opened in Richland Parish and the same heirs, together with Marie Fried, were placed in possession of her estate, each in the proportion of ⅛th of an undivided half interest in the property.

 The deed to the property in controversy, declaring simply that the property was being sold by the named

executors of the estate of Sol Fried in their capacity as such without any recitals showing that the decedent's testament had been registered and ordered executed by the court of Richland Parish, as required by Article 1688 of the Revised Civil Code, and without any compliance with respect to the formalities required under our law for the sale of property under the administration of a testamentary executor, Articles 1670, 1165–1167, Revised Civil Code, is a nullity; Bender v. Bailey, 130 La. 341, 57 So. 998; Donaldson v. Hull, 7 Mart., N.S., 112; Robert v. Brown, 14 La.Ann. 597; Smelser v. Blanchard, 15 La.Ann. 254; and because of the inclusion therein of the clause above referred to, the deed will not support a plea of prescription of ten years acquirendi causa, for under Article 3478 of the Revised Civil Code, exacting that the possessor must have acquired in good faith and by just title, one of the requirements is "that the title be valid in point of form" Article 3486, subd. 1. Besides, while it may be said (and we think the record so discloses) that Bradley was in moral good faith in acquiring and taking possession of the property, he was nevertheless in legal bad faith, since he was placed on inquiry as to the status of the property being conveyed to him by the inclusion in the deed of the clause above referred to. See Francoise v. Delaronde, 8 Mart., O.S., 619; Reeves v. Towles, 10 La. 276; Hall & Turner v. Mooring, 27 La.Ann. 596; Lemoine v. Ducote, 45 La.Ann. 857, 12 So. 939;

Heirs of Ford v. Mills, 46 La.Ann. 331, 14 So. 845; Blair v. Dwyer, 110 La. 332, 34 So. 464; Gremillion v. Roy, 125 La. 524, 51 So. 576; Ruth v. Buwe, 185 La. 204, 168 So. 776; Little v. Barbe, 195 La. 1071, 198 So. 368.

The defendants, relying on the case of Hamilton v. Rickerson, 185 La. 199, 168 So. 774, 775, argued both orally and in brief (although not pleaded) that under the provisions of Act No. 217 of 1932, LSA–RS 13:3716, providing that in petitory actions the deeds of sheriffs, succession representatives and certain other officials shall be prima facie evidence of the authority of the officer who made the deed and proof of such sale, the executors' deed will support the plea of prescription of ten years. The holding in that case does not sustain their position. That case simply holds that the statute applies to a deed (of a sheriff, succession representative, etc.) *"which is regular and valid on its face"*. (Italics ours.)

The next question for our consideration is whether the plaintiffs' action is barred by the provisions of the Revised Civil Code declaring that actions "for the nullity or rescission of contracts, testaments or other acts" are prescribed by five years, Article 3542, to be found under the heading "Of the Prescription Which Operates a Release from Debt", in Chapter 3 of Title XXIII—Prescription, and "In all cases, in which the action of nullity or of rescission of an agreement, is not limited to a

shorter period by a particular law, that action may be brought within ten years * * *" Article 2221, to be found under the heading "Of the Action of Nullity or of Rescission of Agreements", in Book 3, Chapter 5 of Title IV—Conventional Obligations.

█ Under the jurisprudence of this State the applicability of these two articles has been restricted to those nullities that are not in derogation of public order and good morals. In considering them this Court has differentiated between nullities of that type and those established in the interest of individuals, and has narrowed the applicability of the articles to the latter class of nullities. See Vaughan v. Christine, 3 La.Ann. 328; Ackerman v. Larner, 116 La. 101, 40 So. 581; Doucet v. Fenelon, 120 La. 18, 44 So. 908; Barnes v. Barnes, 155 La. 981, 99 So. 719; Succession of Henderson, 195 La. 665, 197 So. 267; Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627; and Whitney Nat. Bank of New Orleans v. Schwob, 203 La. 175, 13 So.2d 782. In the Schwob case the author of this opinion observed: "This court has differentiated between absolute nullities in derogation of public order and good morals and those which are established in the interest of individuals. The latter nullities are susceptible of ratification, either expressly or impliedly, and may be prescribed against, while the former are never susceptible of ratification and can never be prescribed against."

203 La. at page 179, 13 So.2d at page 783. The reason is that the law of itself continually resists the act which is contrary to public order or good morals; consequently, the ratification would itself be tainted with the vices reprobated in the act sought to be ratified. The plaintiffs are not contending here, nor have they pointed to any law of this state that would stamp the deed involved as being in derogation of public order or good morals; their contention is simply that the deed was void *ab initio,* and therefore is not susceptible of ratification. An examination of the several authorities relied on by them shows that Article 3542 is clearly not controlling, under our jurisprudence; and while there are expressions to be found in some of the cases which, taken out of context, would appear to support their position as to Article 2221 as well, a careful analysis of them (including a reference to the original records in some of the older cases) shows either that less than ten years had elapsed between the time of the transaction sought to be set aside and the filing of suit, or that the liberative prescription of Article 2221 was not at issue; consequently they are not controlling, and an analysis of the cases would serve no other purpose than to make this opinion too bulky.

In order to arrive at the proper construction to be placed on Article 2221 we will resort to the interpretation accorded the corresponding article of the Code Napoleon and will examine the French

authorities—a procedure often followed by this court in arriving at the true intention of the lawmakers where there is a paucity of judicial interpretation under our own jurisprudence. See Succession of Lissa, 198 La. 129, 3 So.2d 534, and authorities therein cited.

Article 2221 of the Revised Civil Code is an exact replica of Article 1304 of the Code Napoleon. All French commentators are in accord that the provision of the article is based on the presumption of ratification. See Aubry et Rau, Droit Civil Francais, t. 4, p. 447, note 3; no. 339, p. 448 (5th ed.); Huc, Commentaire du Code Civil, t. 8, sec. VII, p. 235 (1895 ed.); Laurent, Droit Civil Francais, t. 19, no. 14, p. 21 (4th ed.); Toullier, Droit Civil Francais, t. 7, no. 562, p. 664 (5th ed.). The remarks of the French commentators are enlightening on the subject of the applicability of the article.

F. Laurent, one of the most eminent of the French writers, in his work "Droit Civil Francais," said: "Article 1304 provides: 'In *all* cases where the action in nullity of a covenant is not limited to a shorter time by a particular law, this action lasts ten years.' Does this mean that *all* actions in nullity are subject to this prescription? In spite of the generality of its terms, the law suffers a restriction. The Court of Bruxelles formulated it thus: 'Article 1304 is general, it does not distinguish between the different kinds of nullities and submits them all to the prescription of ten years if motives of public order do not put an obstacle in the path of the confirmation of the obligation.' This is the true principle: The prescription of Article 1304 is in reality a confirmation; it supposes therefore that the covenant can be confirmed. Now, to confirm is to renounce the right which one has to sue in nullity, and this renunciation cannot take place when the vice which taints the covenant is of a public order; we may renounce that which is established for our interest but we may not renounce that which is established in the interest of society. Thus, one cannot confirm nullities of a public order, and the tacit confirmation of Article 1304 is impossible, as well as the express confirmation." (Vol. 19 (4th ed.), sec. 14, p. 21 et seq.)

The author, in the same volume, after pointing out that there are some who entertain the view that this article should be restricted in its applicability to vices of consent or of incapacity, their argument being that Article 1304 does nothing more than reproduce the Ordinances of 1510 and 1539 (relating solely to vices of consent and causes of minority), gave what he considered a peremptory reply to the argument concerning tradition, thus: "It is true that Article 1304 seems to limit the prescription of the action in nullity to these two causes; but the first part of the article, that which established the principle, is couched in the broadest terms. In *all cases,* says the law. One must conclude from that language that the Code gen-

eralizes the ancient ordinances which were conceived in a restrictive sense. * * * As far as the provisions of Article 1304 which determine the period from which the ten years begin to run, those provisions have for their object not the limitation of the general principle of law but the determination of a particular difficulty which is presented for certain causes of nullity, which causes exist for a more or less long period of time. This is the opinion generally followed, and it does not appear to us to be open to question." (Laurent, op. cit. supra, sec. 15.)

Toullier, another renowned authority on the Code Napoleon, in his work "Droit Civil Francais" (t. 7, 1. III, T. III, chap. V, S. 561 et seq.–5th ed.), after observing that that which renders a nullity absolute is not the reason or the grounds which caused the legislature to pronounce the act null, but rather the will of the legislature, which declares that there shall be no recognition of the existence of the act and deprives it of all legal effect—and that the nullity may thus be invoked not only by each of the contracting parties, their heirs and assigns, but also by all persons who might wish to recognize the nullity or oppose it—asks the question: "But if the nullity which is absolute can be urged by all those who have an interest in so doing, can it be cloaked by ratification? At the outset, a distinction must be made between nullities based on motives of public order, on the interest of society in general or which take their source in the respect due to morals, and nullities established for the sole interest of particular persons. In the first instance, the nullity cannot be cloaked by any kind of ratification, either by the one or the other of the contracting parties or by the two jointly. *The ratification would itself be infected with the same vices as the act sought to be ratified.* However, if things had come to a point where the covenant ceased to be illegal and could be born, it could then be ratified, *either expressly or tacitly. * * * It is thus a principle: That all men in whose favor there is the right to attack an act which the law pronounces null for his private interest, validates that act and renders it completely obligatory upon himself by ratification, either express or tacit.* The Roman laws on this point offer us a multitude of decisions, both clear and positive, and the more respectable in that they are confirmed by Articles 1338 and 1340 of the Code Civil." Articles 2272 and 2274, Revised Civil Code. The author then gives an example: "A sale without formalities, made by a tudor of the immovables of his pupil, is an absolute nullity. However, if in the accounting rendered the minor upon reaching majority the price of the sale has been employed and paid, the approval of the account is a ratification of the sale, and the purchaser of the immovable need have no further worry. * * *" (Italics ours.) (Toullier, op. cit. supra, sec. 562.)

Since it may appear harsh that under our law one may be concluded to have ratified an act of which he had no knowledge, we think it apt to reproduce here Laurent's rationalization on the subject matter. "From the time that confirmation is possible, prescription runs, even though him against whom it runs would not know the right which was being prescribed against him; the same should be true of ten-year prescription. It is true that the law is in derogation of the common right in that which concerns the period when prescription begins to run where there is a vice of consent or of incapacity; *but it is not in derogation of the common right for other causes of nullity."* (Italics ours) The author, after referring to a case before the Court of Cassation wherein the ten-year prescription was upheld as barring the attack by heirs, because of vice of form in the marriage contract of their ancestor, the time having begun to run from the death of the spouse even though the heirs had no knowledge whatsoever of the vice which gave them their right of action, remarked: "Thus they were regarded as having renounced an action of which they were ignorant of the existence. This is illogical, but from the point of view of the texts and principles, the judgment of the Court of Cassation appears irreproachable." (F. Laurent, op. cit. supra, Tome 18 (3rd ed.), Sec. VII, subsec. 2.) It may be well to note here that the author, in answer to his own query: "Can we apply Art. 1304 to covenants which are radically null, or, as we say, inexistant?" observed that "The courts reject the distinction which serves as a basis for our doctrine between acts which are null or annulable and those which are inexistant. * * * The Court of Cassation invokes article 1304, of which it says the general terms exclude all distinction between nullities which are relative, absolute, or [absolute] 'of full right'.", then answered, "Yes, the law is general, and *should receive application in all cases where there is an action of nullity."* (Italics ours) (F. Laurent, op. cit. supra, t. 19, sec. 11, p. 17.)

Thus it may be seen that the lawmakers in their wisdom have deemed it to the interest of society to interpose a statute of repose by fixing a time limit (10 years), after which the parties at interest, by their silence and inaction, are conclusively presumed to have acquiesced in and ratified the act, and to have renounced such right as they may have had to attack it. We think this case furnishes an excellent example of the wisdom of that law. Unquestionably the deed of December 17, 1917, could have been ratified; and, we might add, it is safe to conclude that but for the discovery of oil and gas, which greatly enhanced the value of the property, the nullity of the act would never have been urged in the courts of justice of this state. So, to say the least, this belated action attacking the deed of the executors of the estate of their father whereby the property was sold for an admittedly fair price, of which each

received and is tenaciously holding his just share, is offensive to good conscience and fair dealing and in violation of the very foundation upon which all laws are based, namely, justice, and the equitable maxim that one should not enrich himself at the expense of another; and we think most apt the philosophy of this Court as announced in the case of Lafitte, Dufilho & Co. v. Godchaux, 35 La.Ann. 1161: "The genius of our law does not favor the claims of those who have long slept on their rights, and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement." 35 La.Ann. at page 1163.

The argument that the plaintiffs who were not parties to the act should not be bound by the action of their co-heirs, since they had no knowledge of the sale of the property or that the proceeds therefrom were included in the share each admits having received, is untenable. It is true that these heirs appeared before the court in Richland Parish and testified to the effect that they were not consulted about the sale, had no actual knowledge of the existence of the Louisiana property or that the proceeds from the sale thereof formed a part of the estate, nor any recollection of any accounting having been rendered them by the executors. While such state-

ments are not necessarily unworthy of credence as nearly thirty years have elapsed since the sale, and the two daughters who testified (married at the time and residing in Alabama and Florida) may well have entrusted the administration entirely to their brothers and the family lawyers in whose ability and integrity they claim complete confidence, whereas the two sons who testified were minors, under the guardianship of their mother, and, after her death, of Louis I. Fried (one of the signers of the deed), to whom they had a right to look for the protection of their interests—on the other hand, the failure on the part of the plaintiffs to present as witnesses the three surviving co-heirs who signed the deed, two of whom live in nearby Mississippi, in order that they might explain the reason for executing the deed in the form above indicated and to present the true facts concerning the accounting rendered the heirs upon settlement of the estate of their parents, as well as the failure of the plaintiffs to produce the attorneys of Jackson, Mississippi, who handled the estate of Sol Fried and Rosa Beer Fried, who prepared the deed here attacked, and also the disclaimer of interest for the signature of the heirs, raises the presumption that their testimony would be adverse to plaintiffs' contention, i. e., that a full and complete accounting was not given, nor did they have knowledge of the sale of the Louisiana property and the inclusion of the proceeds in the corpus of the estate. See Bates v. Blitz, 205 La.

536, 17 So.2d 816, and authorities therein cited; Succession of Yeates, 213 La. 541, 35 So.2d 210.

For the reasons assigned the judgment of the lower court, insofar as it dismissed the suit as to the three living executors, Jacob, Charles and Marcus Fried, and the sole heir of the fourth executor, Louis I. Fried, who is Mrs. Augusta Fried Simon, is affirmed; as to the other four plaintiffs, David Fried, Ernest S. Fried, Mrs. Lillie Fried Karpe, and Mrs. Ruby Fried Gunde, the judgment is annulled and set aside, and it is now ordered, adjudged and decreed that their suit be dismissed.

HAMETER, J., is of the opinion that the judgment should be affirmed.

### On Rehearing.

HAMITER, Justice.

On the original hearing of this cause the demands of plaintiff were rejected on the theory, as is shown by the majority opinion, that the liberative prescription of ten years provided by Civil Code, Article 2221 is applicable to the executors' deed in contest and, therefore, precludes the action.

Complaining of the decision plaintiffs' counsel filed an application for a rehearing in which they disputed at length its correctness and the soundness of the mentioned theory. Further, in the application, counsel contended:

" * * * assuming (without admitting) that the prescription provided by Article 2221 can be applied to the action now before the Court and to the so-called executors' deed now under consideration, the Court erred in extending that prescription so as to preclude the assertion of the community one-half (½) interest in this property formerly owned by plaintiffs' mother, Mrs. Rosa Beer Fried.

"In this connection, petitioners respectfully point out * * * that had the so-called executors' deed now under consideration been initially legal and valid, executed in compliance with all the requisites of the law, it could have conveyed no greater interest in this property than the community one-half (½) interest then belonging to the estate of Sol Fried, and could not have affected or conveyed the community one-half (½) interest in this property which had theretofore vested in Sol Fried's widow and which at the time of the execution of this so-called executors' deed was owned exclusively by her; and that, as a consequence, even if the prescription provided by Article 2221 can be applied to plaintiffs' present action and to the so-called executors' deed now under consideration, the application of that prescription cannot enlarge the effect of that so-called deed so as to vest in the vendee title to the widow's community one-half (½) interest, which such vendee could not legally have acquired under said so-called deed even if it had been completely legal and valid at the time of its execution. * * *."

After careful consideration of the application we ordered, to quote from the court minutes, that: "Rehearing granted insofar as Rosa Fried's community interest in the property is concerned. In all other respects the application is denied." The issuance of the order (so restricted) was influenced by the above quoted contention contained in the application, we having failed to discuss in our original opinion any question respecting the community interest of Rosa Fried and our thought then was that perhaps an issue relating thereto and created between the parties in the trial court had been overlooked.

But we find, following the arguments on the limited rehearing and our further examination of the record, that an issue of such nature was never before the trial court or passed upon by it. In no place in their petition did the plaintiffs allege that the executors, by the assailed deed, attempted to convey only the community interest in the property of Sol Fried. Nor did they plead, as they might have done, that in the event of a denial of recovery of Sol Fried's community interest they were entitled to be recognized as the owners of Rosa Fried's one-half interest. Rather, they alleged that the executors "executed a deed by which they attempted to convey the NE¼ of NE¼, Section 36, Township 17 North, Range 8 East, Richland Parish, Louisiana, to John Bradley." And they urged in the petition that such deed is a nullity only for the following causes and reasons:

"(a) Jacob Fried, Marcus Fried, Charles H. Fried and Louis I. Fried had not at the time of the execution of this deed qualified as Executors of the Succession of Sol Fried by probate or succession proceedings had in the Probate Court of Richland Parish, Louisiana, and they were, therefore, without any right to administer or exercise any power in regard to the real estate owned by the Succession of Sol Fried situated in Richland Parish, Louisiana.

"(b) That no order of court was ever issued authorizing the parties to sell this or any other Succession property.

"(c) That there were no debts owing by the succession and there was no necessity for this succession property to be sold.

"(d) The sale was made as a private sale instead of at public sale. None of the requirements, such as having the property advertised, appraised and offered to the highest bidder, or any other formalities and requisites were performed.

"(e) That the alleged vendors had no power, authorization or legal right to represent the succession of Sol Fried in selling this property."

According to their pleadings, in other words, plaintiffs treated the executors' deed as if it purported to convey to John Bradley the entire property and they placed before the trial court for consideration and determination the principal question of whether or not such deed was valid; they sought no ruling as to the effect of such deed on

the respective community interests of Sol and Rosa Fried.

And the district judge, pursuant to plaintiffs' allegations and as appears from his written reasons for judgment, passed upon such principal question without considering if the property belonged to the separate estate of Sol Fried or to the community existing between him and his wife.

██ It being true then that the plaintiffs neither raised nor argued in the district court the issue now discussed of whether the executors' deed affected and conveyed the community one-half interest of Rosa Fried, such issue is not properly before this court and we are unable to consider it. The jurisprudence is well settled that pleas and issues not made in the court of first instance cannot be raised on appeal. Champagne v. Champagne, 125 La. 408, 51 So. 440; Succession of Turgeau, 130 La. 650, 58 So. 497; Safford v. Albritton et al., 161 La. 773, 109 So. 486; Lindner v. Cotonio, 175 La. 352, 143 So. 286; Succession of Quinn, 183 La. 727, 164 So. 781; Gaines v. Crichton, 187 La. 345, 174 So. 666; Shannon v. Shannon, 188 La. 588, 177 So. 676; Crichton et al., v. Lee et al., 209 La. 561, 25 So.2d 229.

For the reasons assigned our decree heretofore rendered is now reinstated and made the final judgment of this court.

FOURNET, C. J., concurs and assigns written reasons.

McCALEB, J., concurs in the decree with written reasons.

HAWTHORNE, J., takes no part.

LE BLANC, J., concurs.

FOURNET, Chief Justice (concurring).

It is my opinion that after the lapse of ten years from the execution of the deed whereby the executors of the estate of Sol Fried sought to convey the entirety of the land, without attack having been made thereon, the plaintiffs by their silence and inaction are conclusively presumed to have acquiesced in and ratified the act and to have renounced any right they may have had to attack it. That is the conclusion we reached in the original opinion; but when the plaintiffs strenuously urged that the community interest of Rosa Fried could not have been affected, the Court, including the author of the original opinion, considered it might be well to give further consideration to that point and accordingly a rehearing was granted, limited to the question of Rosa Fried's community interest. While I do not agree with the conclusion of the prevailing opinion that we should not give the question consideration, it is my view nevertheless that the presumption of renunciation of the right to attack the deed, and of ratification of the act, because of silence and inaction for a period of ten years, applies with respect to the entirety of the property sought to be conveyed in the original deed. For these reasons I

concur in the decree reinstating the original judgment of the Court.

McCALEB, Justice (concurring).

While I am in accord with the result reached in this case, I cannot subscribe to the view that plaintiffs are not entitled to a reconsideration of our original holding, insofar as Mrs. Rosa Fried's community interest in the property is affected, because they did not raise the question in their pleadings and argue it in the district court. Indeed, I think it is rather late and manifestly inconsistent, after we granted a rehearing for the specific purpose of considering Rosa Fried's community interest, to now conclude that the question is not at issue.

It is my appreciation of the law that plaintiffs were not required to present this issue in their pleadings. Their action is based primarily on the nullity of the deed of the executors of the Estate of Sol Fried. The defendants denied this claim and further pleaded various prescriptions including that provided by Article 2221 of the Civil Code. Plaintiffs' charge of nullity of the instrument was sustained both in the lower court and here but, in this court, it was held that the action was barred by the limitation provided by Article 2221 and that plaintiffs were presumed to have ratified the conveyance. There was no need whatever for plaintiffs to file any pleadings to the prescription asserted by defendants as replications are unknown in our practice. Article 329 of the Code of Practice.

Hence, it was entirely conformable with good practice for plaintiffs to urge here, in oral argument or in brief, that the pleas of prescription were not well founded. Nor was it imperative that it be shown by the record that the question concerning Mrs. Rosa Fried's community interest was presented in the court below. For all we know, that question may have been raised in oral argument but, if not, the matter was of little, if any, importance in that court as the pleas of prescription were overruled by the judge.

Nevertheless, it is my opinion that the result on rehearing is correct for two reasons. In the first place, I think that the executors of Sol Fried intended and attempted to convey the entire property to defendants, including the community interest of Rosa Fried. Under these circumstances, it seems clear to me that this action, insofar as it affects the heirs of Rosa Fried, is prescribed under Article 2221 of the Civil Code, because, by their acceptance of the proceeds of the sale, they are considered to have ratified the act of the executors, as pointed out in our original opinion.

Furthermore, I am convinced that, even if the liberative prescription provided by Article 2221 is inapplicable to the community interest of Rosa Fried, the defendants acquired the property under Article 3478 of the Civil Code by prescription of ten years which began to accrue as soon as

 

the executors lost their right of action to recover the property for the Succession of Sol Fried by reason of ratification of the nullity of the conveyance by operation of law. From that time on, the defect as to form was cured and the legal bad faith of Bradley resulting from the original nullity of the deed, was alleviated. Thenceforth, his possession was converted to that of a good faith purchaser under a title translative of property.

I respectfully concur in the decree.