PONDER, Justice.
 

 In this suit the plaintiffs, Benjamin Miller and his wife, Victoria Miller, allege that they are the owners of 80 acres of land, having acquired it by purchase in 1905, and that they have lived continously on the land as a homestead to this date; that March 12, 1914, being indebted to Armand Roos, a Shreveport merchant, in the sum of $260, Benjamin Miller executed in favor of Roos an instrument which he believed to be a mortgage on the property to secure the debt; that he did not learn that the instrument he signed wás a deed conveying the land to Armand Roos for a purported cash consideration of $300 until some time in the year 1919; that Armand Roos admitted these facts and repeatedly stated that it was intended to be a mortgage, and that Armand Roos agreed to correct and cancel the mortgage, but failed to do so; that Victoria Miller was without knowledge of the transaction and never waived or relinquished her homestead rights; that the instrument was signed by Miller being induced by false representations; that no consideration was paid at the time the deed was passed, as it was the intention of Miller to secure a preexisting debt by mortgage; that the consideration named in the deed is vile, as the land and improvements were worth at that time at least $2,000; that there has never been any delivery of the possession of the property; that the indebtedness intended to be secured has been paid in full; that the plaintiffs have paid the taxes on the property; that the heirs of Armand Roos are claiming the ownership of the property; that the deed constitutes a cloud upon the title of the plaintiffs; and that Armand Roos and his heirs should account for the revenue of all leases from the land. The plaintiffs prayed that the instrument be declared a mortgage fully paid and canceled from the records; that the property be declared a homestead; that the plaintiffs be decreed the owner free from all claims of the defendants; and that an accounting of the revenues be ordered.
 

 The defendants in their answer aver that the instrument was intended to be a deed in good faith and that the plaintiffs’ demands should be rejected; that. Benjamin Miller, one of the plaintiffs, is estopped on account of having signed a certain lease as an attesting witness executed by Armand Roos on the property, and by signing certain instruments describing Roos as the lessor and owner of the land. The defendant filed a plea of prescription pleading the prescription of one, five, and ten years in bar of the plaintiffs’ demands. The plaintiffs interposed the plea of prescrip
 
 *807
 
 tion of ten years to any unpaid balance found to be due in event the instrument is decreed a mortgage.
 

 Upon examination of the record, we find that Benjamin.Miller acquired the land on November 15, 1905. On March 12, 1914, Benjamin Miller executed a cash deed conveying this property to Armand W. Roos for the consideration of $300. The property has been assessed to Armand W. Roos and his heirs continuously since the year 1915, and Armand W. Roos and his heirs have paid the taxes from that date. Armand W. Roos executed various oil leases to various persons on part or all of this property at various times: One to the Producer Oil Company on January 24, 1916; one to J. A. Brandon, January 6, 1920; one to H. L. Skannal, December 22, 1922; one to H. P. Langford, May 3, 1926; and one to the Palmer Corporation on December 18, 1926. The plaintiffs have resided continuously on this property with the exception of the year 1928. The property was rented by A. W. Roos in 1928 to Cal Cole, at which time Roos repaired the building on the property at a cost of $125. Under a lease executed' by A. W. Roos, a gas well was drilled in August, 1929, upon the property, and all the royalties and rentals have been paid to A. W. Roos or his heirs since that date. In 1933, 1934, and 1935, Miller executed certain crop pledges to government agencies in which it was recited that Roos Bros, owned the property. The evidence shows that Miller brought these instruments to Roos Bros, to sign the waiver as owners.
 

 The rest of the testimony in this case is very conflicting. Miller testified that he permitted Cole to farm the land in 1928, the year that Miller moved off the land, which is contradicted by Cole. Cole testified he had no dealings with Miller, but leased it from Roos. Mr. Skannal, a Bossier parish planter, testified that Miller tried to borrow money to purchase the land stating that Dave Roos had told him he would sell the land for $6 per acre. He would sell the land for $6 per acre. He ago. Miller admitted having the conversation with Mr. Skannal and of asking for the loan, but stated that he told Mr. Skannal he could “straighten out” his place if he got a little money. Miller testified that Mr. Skannal said that the land was not worth $5 or $6 an acre. This testimony is contradictory. There was a statement signed by Mliller to the effect that he rented. this property from the estate of A. W. Roos. Miller contends that it was a note to buy a mule. The evidence is very conflicting as to this instrument. Miller, R. O. Carter, and T. R. Brandon testified to the. effect that Armand Roos admitted that the deed was intended as a mortgage. The lower court gave little weight to this testimony, as is stated in the lower court’s opinion: “This has little value as it is recognized that the statements imputed to a deceased are the weakest form of proof. This is particularly true where the statements do not conform to the conduct of the parties.” J. R. Brandon testified that in 1919 while negotiating with Miller for a lease upon the land he found the recorded deed where Miller had transferred the
 
 *809
 
 land to Roos and upon informing Miller that the instrument was a deed he and Miller went to see Roos, and that Roos had admitted that the deed was intended to be only a mortgage. Brandon testified that he then secured a- lease on the property from Roos which was signed by Miller as a witness, and that the check for $400 given Roos in payment of the lease was cashed by Roos who in turn gave Miller the $400, and that Miller then paid Roos $200 of that' amount. Miller testified that Roos stated that he did not want the property, but wanted his money. In addition to the fact that Roos is now deceased and cannot contradict these statements, we find that Mr. Skannál testified that Brandon had been securing leases for him and knew that he, Skannal, owned a lease on part of this property at the time he sought to secure the lease from Miller.. Furthermore, Mr. Skannal’s testimony, which in the opinion of the lower court gives Brandon a' doubtful indorsement, reads:
 

 “Q. You say you know Mr. John Brandon? A. Yes.
 

 “Q. He is a reputable man isn’t he? A. Well let me tell you, he is a kinsman o.f mine.
 

 “Q. You employed him? A. Yes.
 

 “Q. You had confidence in him or you would not have employed him? A. Well, I had some confidence in him.”
 

 Miller testified that in 1925 Mr. Laxaze gave him a check for $60 for the damages caused to the crop on the property by drilling operations, that the check was payable to him, Miller, and he, Miller, indorsed the check over to’ Roos to be applied to his debt. The check was not made payable to Miller, hut was made payable to Roos. Lacaze testified that all the royalties from the well on the property since 1929 have been paid to Roos and the Roos heirs without question, and though he had been on the property frequently in the last twelve years, having on a number o’f occasions seen Ben Miller, that Ben Miller has never claimed any of the royalties or ever mentioned owning the property. In 1914 at the time the deed was passed the property could not have been worth more than $400 from the testimony in this case. The testimony shows that this property has never produced more than one small bale of cotton per year as an average. The testimony shows that Roos and Roos Bros, furnished supplies to Miller pr’io’r to the passage of the deed and some years subsequent thereto. There is testimony from Miller to the effect that the royalties collected by Roos was to be used to pay the taxes and apply on the debt for furnishing him .supplies. This testimony is controverted by the testimony by Dave Roos. Dave Roos testified that the cotton raised on the place went to pay the rent on the place and the supplies furnished Miller. The deed from Miller to Roos was passed before E. D. Herndon, Jr., a reputable lawyer, who is now deceased. Miller admits that he signed the deed in the presence of Mr. Herndon. Miller also admits that he can read and write to some extent. Miller testified that Mr. Herndon did not read the deed to him. The lower court in its opinion stated that it was inconceivable that a man of Mr. Herndon’s standing would permit Miller to
 
 *811
 
 sign the instrument without explaining the contents of the instrument to him.
 

 All the documentary evidence in this case shows that Roos exercised ownership* of the property. The oral testimony as to whether Miller resided on the place as owner or as tenant is extremely conflicting. In view of the conflicting testimony as to the nature of the possession of Miller and the fact that all the documentary evidence tends to show that his possession was that of a tenant and not as owner, it would appear from the testimony as a whole that Miller occupied the premises as a tenant.
 

 The lower court rendered judgment in favor of the defendants rejecting the plaintiffs’ demand, and the plaintiffs have appealed.
 

 The lower court was of the opinion from the pleadings that this was a suit to cancel and erase the instrument on the grounds that it was signed in error because of fraud and misrepresentation. After a careful examination of the pleadings and the relief sought, we arrive at the same conclusion. The evidence does not support the plaintiffs’ contention. However, in view of the fact that Miller was informed that the instrument was a deed in 1919 being more than ten years from the institution of this suit, the plea of prescription interposed by the defendants would be applicable and should be sustained. Article 2221, Revised Civil Code, provides:
 

 “In all cases, in which the action of nullity or of rescission of an agreement, is not limited to a shorter period by a particular law, that action may be brought within ten years.”
 

 The plaintiffs contend that the principle point involved in this case is whether or not the instrument is a pignorative contract, given as security, or an act of sale. They urge that the evidence shows that Miller has been in physical possession of the property since the instrument was executed. We have already determined that the evidence on behalf of the defendants to the effect that the occupancy of the premises by Miller was that of tenant being corroborated by all the documentary evidence, by crop liens signed by Miller and Roos, and the Roos heirs receiving the revenues from the gas produced on the property, established the fact that Miller occupied as the tenant of A. W. Roos and his heirs. The evidence as a whole goes to show that the parties intended the instrument to be a deed. The consideration called for in the deed was near the value of the property at the time the deed was passed. From the evidence the property could not have been worth more than $400 at that. time. It is unnecessary for us to analyze the decisions cited by the plaintiffs in support of their contention that the instrument is a pignorative contract for the reason that the facts do not support the contentions raised by the plaintiffs.
 

 For the reasons assigned, the judgment is affirmed at appellants’ cost.