GLADNEY, Judge.
This appeal involves an attempt to set aside as simulated, a notarial act, authentic in form wherein Alice Moore Steen transferred to Carrie Moore Davidson, certain property situated in St. Joseph, Tensas Parish, Louisiana. The suit was filed May 10, 1955 by Mrs. Amalia Steen Spiers. Carrie Moore Davidson was made defendant therein. Mrs. Davidson died July 19, 1957, prior to the trial of the case on the merits, and her heirs, Alice Davidson Taylor and Marjorie Davidson have been substituted as parties defendant. The petition sought relief other than to-have the instrument in question declared-simulated, but following an appeal to the Supreme Court upon exceptions filed by the defendant, the cause was remanded by that court with its consideration limited to-plaintiff’s action in declaration of simulation. The case was tried by the district court which rendered judgment rejecting plaintiff’s demands, and this appeal was prosecuted.
*542 The plaintiff in this suit, Amalia Steen Spiers, is the daughter and sole heir of- Alice Moore Steen, who had inherited the property in dispute consisting of some six store buildings in St. Joseph. Alice Moore Steen and Carrie Moore Davidson were sisters. Their father had died, leaving his two daughters comparatively wealthy. As of June 13, 1943, Mrs. Steen had dissipated her resources and was very much in debt. The relationship between the parties existing at that time is accurately set forth in the trial judge’s stated reasons for judgment:
“On the one hand we have the Steen family, none of whom had any business experience. The record discloses this fact. Apparently there was little or no attempt to conserve the assets of their patrimony. While this court will not state that they were improvident, their ability to spend was only limited by the funds on hand or their capacity to borrow. The future was thought of only in terms of what the income would be. This was the pattern of their generation. They lived during a period of social transition when financial success and not the social graces had become the criterion of status and they were not trained to cope with a world of change.
“The entire foundation of the present difficulty was lack of money; things got worse; creditors began to close in and the situation became desperate.
“The one exception in this family was Mrs. Carrie Moore Davidson, widow of W. M. Davidson. In her affidavit, Exhibit C., she stated, ‘My father and Alice’s father was at one time a wealthy man and he provided well for me and for Alice and for the other children.’ Mrs. Davidson also demonstrated her ability as a conservator and as an astute business woman. She not only preserved her inheritance but increased her holdings. She also had an intense pride in her family. Time after time she came to the rescue of her more unfortunate relatives and rendered financial assistance when they called on her. The entire record is replete with statements testifying to her generosity toward her less fortunate kinsfolk.”
The basis for plaintiff’s action is set forth in her petition, which, inter alia, alleges the grounds up on which the transfer of the property from Mrs. Steen to Mrs. Davidson was to be made:
“That the true agreement made whereunder the property was deeded to Mrs. Davidson was that Mrs. Davidson would collect the rents and manage the property. That Mrs. Davidson would support Mrs. Steen from the rents and revenues of the property, that Mrs. Davidson would pay off the mortgage creditors, that Mrs. Davidson would pay the necessary insurances, taxes, etc., and other that Mrs. Davidson would account for the rents and revenues from the property as against the payment of the mortgage and the payment of support and other necessary expenditures to Mrs. Alice Steen or on Mrs. Alice Steen’s death would account to Amalia Steen, and return the property on the mortgage being paid off and the expenses being paid off from the income therefrom.
“That the said property was revenue producing property continuously rented and occupied during the entire time beginning back before it was deeded to Mrs. Davidson.
“That the said transfer from Mrs. Alice Moore Steen to Mrs. C. M. Davidson was in fraud of the forced heirs and was a simulated sale and did not convey the community property interest to Mrs. Davidson and that the said transfer has no valid effect against the forced heirs of Alice M. Steen.”
*543 In order to establish that the transaction was in fact a simulation, the burden rests upon plaintiff to: (1) show that the named vendee received the property without giving consideration therefor, and (2) that it was the intent of the parties that the property would be returned to the vendor or her heirs.
Counsel for appellant soundly argues that a forced heir has the right to annul the simulated conveyance by parol evidence under Article 2239 of the LSA-Civil Code, which provides:
“Counter letters can have no effect against creditors or bona fide purchasers ; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [legitime]. [As amended, Acts 1884, No. 5]”
In its opinion upon remand, Spiers v. Davidson, 233 La. 239, 96 So.2d 502, 504, (1957), the Supreme Court commented:
“ * * * a simulated contract is one which has no^ substance at all, or is purely fictitious and a sham, an act of mere pretense without reality. Such a contract, although clothed in concrete form, is entirely without effect and may be declared a sham at any time at the demand of any person in interest. See Houghton v. Houghton, 165 La. 1019, 116 So. 493; Hibernia Bank & Trust Co. v. Louisiana Avenue Realty Co., 143 La. 962, 79 So. 554; Lemann, Some Aspects of Simulation in France and Louisiana, 29 Tul.L.Rev. 22 (1954).”
The court made the further observation:
“We wish to make it clear that in considering and discussing the exception of no cause of action it has not been our intention to express any opinion on the merits of this case. Whether appellant can establish by strong, convincing, and legal evidence that the act of sale was simulated remains for future determination. See Miller v. Miller, 226 La. 273, 76 So.2d 3; Dietz v. Dietz, 227 La. 801, 80 So.2d 414.”
The record presents the testimony of several witnesses and a number of exhibits which have a material bearing upon the question of whether or not the transfer was simulated. The evidence tendered as favorable to plaintiff’s cause consists almost entirely of her own testimony. A number of witnesses gave testimony supporting the position of defendant. These were Alice Davidson Taylor, Majorie Davidson, Philip Watson, Marion P. Guthrie, Carryl Seaman, and others.
The admissibility of certain writings have been questioned by counsel for appellant, particularly an affidavit of Mrs. Carrie Moore Davidson, which was dated October 22, 1953, approximately four years prior to her death July 19, 1957. In the affidavit she stated she was eighty-seven years of age at that time and sound of mind. The trial court ruled this document admissible and perhaps afforded some weight to it. He was of the opinion it was in the nature of a dying declaration and noted:
“It is a moving and touching document because it lays bare the lives of the members of a proud southern family, a family that had status, an important family whose leadership had left an indelible imprint on the culture, mores, and traditions of the community.”
But we do not agree with the judge a quo that this document was admissible, and in arriving at our decision in this case we have precluded from consideration the declarations contained therein. The instrument is ex parte and self serving. It cannot be considered a dying declaration.
. The record also contains other testimony which may be said to be objectionable under *544 strict rules of evidence, and we think the court was most lenient in admitting some of the testimony of plaintiff relating to matters touching upon the transaction. We think it is clear, indeed, that the plaintiff presented all circumstances within her knowledge having a bearing upon her case.
Another document which the court admitted was a letter from Mrs. Davidson to her niece, Amalia Steen Spiers, which we quote:
“Dear Amalia
“Please don’t discuss your affairs with outsiders.
“Ann told me last week that you said your mother had given the pin for all she owed me. Now Amalia I’m not complaining but I just want to tell you I’m way behind on stores and am sending you a statement on the house. You know I’ve been paying taxes & insurance for about 10 years on both store & house & have had to sell bonds to do it. I’ve never complained to you but now I’m making this statement. I want you to see how you stand.
“All those checks I gave your mother were charged to the store & you know the Jefferson ins. took about $600 a year. You know Terrell was the cause of my having to pay $680 which was bad to start with. I’m always hoping we can sell them now that they are in pretty fair shape & I can put you on easy st.
“I pray Jimmie will like it there. I feel very sad over it all. Of course he can come back if he does not like it.
“Don’t feel hurt because I write this. I am going to get the stores acct straight — later—for you & then I’ll keep it for you each month.
“Aff
“Aunt Carrie.”
The letter was produced and offered in evidence by counsel for plaintiff for the purpose of showing that Mrs. Davidson recognized therein that she was the valid owner and the property would be restored to plaintiff. We think the admission thereof was proper as a declaration against interest.
Another exhibit of importance is a statement of an account compiled by Philip Watson and George Snellings, the attorneys for the defendant, with the assistance of data furnished by Marion Guthrie. The latter had, during the period from June, 1943, to June, 19S3, attended to Mrs. Davidson’s income taxes, which disclosed the revenues and expenditures from the Steen buildings. This document was prepared after the death of Mrs. Davidson in response to a demand in plaintiff’s petition that she be furnished an accounting. The statement is detailed and substantially documented, although not entirely so, and discloses that over the period aforementioned, the total net provable cost and loss to Mrs. Davidson for her operating the buildings and support of the Steen family without allowance for interest, amounted to $16,511.43. The tabulation in effect discloses that the net operating income on the buildings for the ten year period was only $1,900.68, and the total disbursements and expenses for the account of the Steen family, as admitted or verified, was $18,412.11. This exhibit clearly shows that following the transfer of the buildings on June 13, 1943, Mrs. Davidson sustained a considerable loss during the first few years. The property then was in bad repair and had a number of vacancies.
It is contended by counsel for plaintiff that proof of the intention of Mrs. Davidson to return the property to the vendor or her daughter is to be found in the testimony of plaintiff and the letter set forth above, signed “Aunt Carrie”. Amalia Steen Spiers testified that at the time of the transfer of the property her mother was unable to pay the debts which were past due and foreclosure by the mortgagor was impending; that Mrs. Davidson obligated herself to assume the mortgage of which *545 the principal was originally $5,000.00, taxes and other expenses; and at that time the rents were insufficient to meet these amounts. Plaintiff also stated she understood her aunt was to have complete control of the property in every respect, to discharge taxes, insurance, make repairs, and incur other expenditures, and that she promised to pay an allowance to keep the Steen family in some degree of comfort, which was stated to be $250.00 per month. The “Aunt Carrie” letter above may be considered as one of those occurrences of a personal nature in the relationship between the families, and we deduce that Mrs. Davidson wanted her niece to realize the extent of the burden she was carrying. We cannot look upon the letter as proof of an obligation. The district judge was of this same opinion.
The testimony of Marion Guthrie, Carryl Seaman, Philip Watson, Alice Davidson Taylor and Marjorie Davidson, as to the effect that it was known in the community Mrs. Davidson owned the buildings and none of these witnesses had ever heard to the contrary prior to the commencement of this suit. It is reflected by the record, as recognized by the judge a quo, that Mrs.. Davidson was most generous and wished to take care of her relatives. We conclude, therefore, that there is no substantial showing the equitable ownership of the property was to remain with the vendor or her heirs.
The precise issue in the case, however, is whether or not the notarial act in dispute is supported by consideration. The rule is well established in our jurisprudence that when the price, no matter how inadequate, has been paid by the purchaser in a sale, the transaction is not a simulated one. Spiers v. Davidson, supra; Bagala et al. v. Bagala, 237 La. 60, 110 So.2d 526 (1959). Actions by forced heirs to undo transactions of their ancestors, as done in fraud of their rights, can only succeed where the proof adduced in support thereof is convincing and not irreconcilable. Blackman et al. v. Brown et al., 155 La. 959, 99 So. 711 (1924); Citizens’ Bank & Trust Company v. Willis et al., 183 La. 127, 162 So. 822 (1935); Bank of Abbeville & Trust Company v. Lyons, 185 La. 117, 168 So. 513 (1936). In Freeman v. Woods et al., La.App., 1 So.2d 134, 136 (2d Cir., 1941), this court held the assumption of an existing indebtedness is alone a sufficient consideration to protect a deed from the attack of simulation. The opinion by Judge Hamiter states:
“The record does disclose that no cash payment attended any of the transfers in question; each was effected entirely on a credit basis, either through the giving of a note or notes or by the assumption of an existing indebtedness. But sales are often made in this manner, and they are nonetheless legal and valid, provided, of course, good faith surrounds their consummation. Significantly, in the deeds affecting the Gaddis property from Freeman to Dr. Brown, and from Dr. Brown to A. M. Woods, the only consideration expressed for each conveyance was the assumption by the grantee of the outstanding notes.”
Counsel for appellant has specially called our attention to Schalaida v. Gonzales, 174 La. 907, 142 So. 123 (1932); Hearn et al., v. Cockerham, La.App., 66 So.2d 17 (2d Cir. 1953); Miller et al., v. Miller et al., 226 La. 273, 76 So.2d 3 (1954); and McBride et al., v. McBride, La.App., 121 So.2d 353 (1st Cir. 1960). These cases re'st on their proven facts and we find them inapposite to the facts under consideration. We do not think any good purpose would be served by a review thereof.
After a careful analysis of the voluminous records and the numerous exhibits in this case, we have concluded that plaintiff has entirely failed to prove the transaction in question was a simulation, and we find that the deed in question was supported by consideration consisting of the *546 assumption of mortgage indebtedness and other obligations by the vendee, arising out of the transaction, which obligations far exceeded the revenues which accrued from the property over the period in question. Under these facts which we find firmly established in the record, the defendants are clearly entitled to judgment. Our conclusion is strengthened by the thorough and careful decision of our learned brother on the trial bench.
Accordingly, for the reasons hereinabove set forth, the judgment from which appealed is affirmed at appellant’s cost.