228 So.2d 205 (1969)
Gerene MOORE et al., Plaintiffs-Appellants,
v.
SHELL OIL COMPANY et al., Defendants-Appellees.
No. 2820.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1969.
Rehearing Denied December 4, 1969.
Writ Refused February 6, 1970.
*206 William J. Daly, and Warren M. Simon, New Orleans, for plaintiffs-appellants.
Robert B. Shaw and George C. Schoenberger, Jr., Luther E. Hall, John C. Christain and R. K. Milling, New Orleans, Earl H. Willis, St. Martinville, Leon E. Roy, Jr., New Iberia, for defendants-appellees.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
By this suit, Gerene Moore seeks to be recognized as the owner of a 40% interest in 760 acres of land in St. Martin Parish. She is joined as coplaintiff by her mineral lessee (Reisig). The plaintiffs appeal from the dismissal of their suit upon exceptions pleading estoppel, no right of action, and various prescriptions.
The essential title dispute is between the plaintiff Miss Moore and the defendants Ramos Investment Company, a partnership and its partners. Both claim title through the Berwick Lumber Company, a corporation which acquired the disputed acreage in 1890. For purposes of this appeal, as will be explained, the essential issue is whether prescription bars Miss Moore's attempt to set aside 1915 quitclaim deeds executed by her ancestors in title, from whom by inheritance she allegedly acquired ownership of the property claimed.

(1)
In 1908, Berwick transferred a 60% interest in the property to estates of Robert and Charles Moore, Gerene Moore's ancestors in title. (Miss Moore's claim is founded upon her eventual inheritance of a part of their interest.) However, in 1901, when title was still in Berwick, Robert and Charles Moore had sold by *207 warranty deed to Ramos's predecessor their undivided 50% interest in property including the subject lands. Through operation of the after-acquired title doctrine, White v. Hodges 201 La. 1, 9 So.2d 433, 443, Ramos thus claims that by virtue of this 1901 deed its predecessor acquired title to at least 50% of the property when the Moores acquired it from Berwick in 1908.
In 1915, Gerene Moore's ancestors in title, heirs of Robert and Charles Moore, executed in favor of Ramos's predecessor quitclaim deeds of any interest in the subject lands once owned by Robert and Charles Moore. By these deeds, these heirs (Robert Mitchell Moore and Leah Moore)[1] quitclaimed and transferred to Ramos all their interests in the lands now claimed by Miss Moore. Any interest the present plaintiff, Miss Gerene Moore, might now have in these lands she acquired from these heirs by inheritance.[2]
Based upon these quitclaim deeds, the trial court dismissed the plaintiffs' suit. Sustaining a peremptory exception pleading liberative prescriptions and no right of action, the court held the pleaded prescriptions barred the plaintiffs' right to attack the quitclaim deeds.

(2)
Preliminarily, the plaintiffs-appellants object to their suit being characterized as pleading, along with a petitory action for ownership of the land, actions of nullity or rescission of the 1915 quitclaims (as well as of the 1901 sale) by the plaintiffs' ancestors in title.
We agree, however, with the trial court that the allegation pleading the quitclaim deeds and then attempting to nullify their effect did indeed set out an action to nullify the deeds.

(3)
A further preliminary procedural question is raised by the plaintiffs' objection to the admission of any evidence for the trial of the objections pleaded by the peremptory exception.
Evidence is admissible to support or controvert any of the objections pleaded by a peremptory exception, save only that of no cause of action. LSA-CCP Art. 931. The evidence introduced at the trial of the exception includes all of the title deeds pleaded, as well as a late-recorded appointment of E. W. Dreibholz by Leah Moore as her agent to sell lands to Ramos. The latter document, although executed after the 1915 quitclaim, included a ratification of prior acts by Dreibholz in the name of Leah Moore.
This evidence extraneous to the petition was admissible for the trial of the objections of prescription pleaded. It was not, however, admissible for the trial of exception pleading that Miss Moore had "no right of action" because of the quitclaim executed by her ancestor.
A quitclaim executed to a third person may be admissible to show a want of *208 interest (no right of action). State ex rel. Adema v. Meraux, 191 La. 202, 184 So. 825. However, a quitclaim executed to the defendant or his ancestor is a matter of defense to the merits, properly pleaded by the objection of no cause of action. On this objection, no evidence beyond the showing of the petition can be received. Wischer v. Madison Realty Co., 231 La. 704, 92 So.2d 589.
We can therefore consider the evidence admitted for the limited purpose of determining whether the pleaded prescriptions bar the plaintiffs' actions to annul the 1915 quitclaim deeds.

(4)
A final preliminary procedural issue is: If prescription does bar the plaintiffs' actions to annul these quitclaim deeds, nevertheless does this permit affirmance of the dismissal of their suit for the lands claimed. The plaintiffs' counsel ably argues that this would require a trial on the merits.
A defense to the merits may be raised by an exception pleading no cause of action. LSA-CCP Art. 927(4). This raises the general issue whether any remedy is afforded by law to the plaintiff under the allegations of his petition.
However, as noted, it is tried on the pleadings alone. LSA-CCP Art. 931. For purposes of its determination, all wellpleaded facts of the petition and annexed documents must be accepted as true, with all doubts resolved in favor of the sufficiency of the petition. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54.
The defense here asserted to the cause of action, that the plaintiffs do not own the land because they quitclaimed their interest in it, is thus ordinarily triable on the merits and not by evidentiary threshold exception. Wischer v. Madison Realty Co., 231 La. 704, 92 So.2d 589. Here, however, on the face of the plaintiffs' petition, the plaintiffs have no title if prescription bars attack on the quitclaim deeds.
The petition sets forth the plaintiffs' chain of title, but it also alleges the quitclaim deeds showing that plaintiffs' ancestors in title quitclaimed their interest in the lands now claimed. Cumulated with the petitory action for ownership of the land is the action to annul the quitclaim deeds, which divested the plaintiffs of title unless voided. If the action to annul the quitclaim deeds is prescribed, then the plaintiffs' petition discloses on its face that the plaintiffs have no cause of action to claim the land. Strong v. Haynes, 152 La. 655, 94 So. 322.
However, here the defendants sought to raise the objection by miscaptioning it as one of "no right of Action", whereas under the jurisprudence it is really one of "no cause of action". Nevertheless, the courts may overlook the miscaptioning of a pleading directed at a certain end and construe it in accordance with its purpose, where no substantive unfairness results to the other party. LSA-CCP Arts. 865, 1005, 5051; Succession of Smith, 247 La. 921, 175 So.2d 269; Bellow v. New York Fire & Marine Underwriters, Inc., La.App., 3d Cir., 215 So.2d 350; Reid v. Crain Brothers, La.App., 3d Cir., 134 So.2d 917.

(5)
This brings us to the central issue of this appeal: Whether the evidence supports the pleaded prescriptions to the plaintiffs' action to annul the 1915 quitclaim deeds. As noted, all the evidence pertinent thereto is admissible and may be considered in determining whether prescription bars the plaintiffs' actions to annul the quitclaim deeds.
We find, for the reasons to be stated, that the evidence proves that the pleaded ten-year prescription of Civil Code Article 2221 bars these actions to annul the 1915 quitclaim deeds. We will therefore discuss only this prescription, pretermitting mention of other liberative prescription and estoppel objections pleaded.
*209 Article 2221 provides that actions for nullity prescribe in ten years.[3]
Perhaps the leading case in the interpretation of this article is Fried v. Bradley, 219 La. 59, 52 So.2d 247. In this petitory action, the plaintiffs' claim depended upon the nullity of a sale of the land by the executors of their father's estate. The deed was an absolute nullity, for the failure to follow ancillary succession procedure and the formalities required by Louisiana law.
The Supreme Court held that Article 2221's ten-year prescription barred an attack on this conveyance and dismissed the plaintiffs' suit. The court there reviewed the French authorities interpreting French Article 1304, from which our 2221 is taken verbatim, and it reconciled earlier jurisprudence, overruling expressions to the contrary.
The court held that this prescription bars an attack on deeds for all nullities established in the interest of individuals, whether absolute or relativethat is, all nullities not in derogation of public order. Unlike absolute nullities in derogation of public order and good moralsi.e., those established in the interest of society, nullities established to protect individual interests are subject to ratification, including tacitly through 2221's application by ten-years' inaction by the individual protected, even though he have no knowledge of the act. See also Whitney Nat. Bank v. Schwob, 203 La. 175, 13 So.2d 782.

(6)
The plaintiffs allege that the 1915 quitclaim deeds executed by Robert M. Moore and for Leah Power (through E. W. Dreibholz, as her agent) did not effectively divest them of their interest in the land, because:
(1) There was no consideration, since the 1901 deed upon which Ramos's claim was essentially founded was intended to convey only the timber, not the land;[4]
(2) There is no showing of a full disclosure of all the circumstances of the alleged invalidity of the 1901 deed (for lack of consideration); and of the invalidity of 1908 proceedings recognizing Ramos's title based upon it (see Footnote 2 above).
Additionally, Leah Moore's quitclaim is alleged to be invalid because:
(3) It was not signed by her; and
(4) The signature of E. W. Dreibholz, who signed it as her agent, is not supported by any written authority for such action.
The nullities of (1), (2), and (4) are among those subject to the ten-year prescription of Article 2221, for they are based upon requirements designed to protect the interests of the individual. See, e.g.: Fried v. Bradley, 219 La. 59, 52 So.2d 247 (absolute nullity of form, apparent on face); Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366 (claim of lack of consideration); Giuffria Realty Co., Inc. v. Kathman-Landry, Inc., La.App. 4th Cir., 173 So.2d 329 (lack of consideration).
In Fried v. Bradley, cited above, the Supreme Court stated, 52 So.2d 254: "Thus it may be seen that the lawmakers in their wisdom have deemed it to the interest of society to interpose a statute of repose by *210 fixing a time limit (10 years), after which the parties at interest, by their silence and inaction, are conclusively presumed to have acquiesced in and ratified the act, and to have renounced such right as they may have had to attack it."
The nullity of (3) may, however, involve an imprescriptible nullity in derogation of public order. If a deed was not signed at all by a party, or signed by someone without any color of authority to do so or without ratification of his authority to do so, then it is not an agreement of the party, and thus may not be subject to the ten-year prescription of Article 2221 against nullity of agreements. See Pitre v. Peltier, 227 La. 478, 79 So.2d 746 (forgery of instrument not prescribed against under Article 2221).
As to (3), however, evidence was admissible to prove that Leah Moore had authorized or ratified the signature of her name by E. W. Dreibholz, agent.[5] Evidence is admissible on the trial of a peremptory exception pleading prescription "to support or controvert any of the objections pleaded." LSA-CCP Art. 931.

(6)
The power of attorney by Leah Moore to E. W. Dreibholz is dated May 17, 1915. (The quitclaim deed had been executed by Dreibholz for Miss Moore two months earlier.) By it, Leah Moore expressly appointed Dreibholz as her agent to "transfer, convey, assign and deliver" to the Ramos Lumber Company, Limited "all my [her] right, title and interest in and to" lands owned by her in Louisiana. She further ratified "any transactions or conveyances" which Dreibholz "may heretofore have made in my [her] behalf by, with, and from the said Ramos Lumber Company."
The plain intent and meaning of the power of attorney was to authorize Dreibholz to execute a quitclaim deed or other transfer of Leah Moore's Louisiana lands to Ramos, and to ratify any prior such deeds or transfers. We are not impressed with the appellants' contention that it did not ratify past quitclaims to (rather than only from) Ramos, since it ratified all such prior transactions Dreibholz had made "by" or "with" Ramos.
We believe that the instrument appointing Dreibholz agent to transfer or ratify met the requirements for a valid power of attorney, Civil Code Articles 2992, 2996, and 2997, and for a valid ratification of Dreibholz's previous quitclaim transfer of any rights Leah Moore had into the land, Civil Code Articles 2271, 2272. We need not discuss these issues, however, since the proof of Dreibholz's authority to sign the quitclaim deed for Leah Moore adequately proves that the nullity complained of is not imprescriptible as in the nature of a forgery.
Thus, the claimed defects in the execution of the quitclaim deed by Dreibholz for Leah Moore rather are, at most, a nullity of form or in derogation of her individual interest. They are subject to the ten-year prescription of Article 2221, for the reasons previously discussed.

(7)
The power of attorney and ratification by Leah Moore to Dreibholz was not recorded until 1965, after the present suit was filed. Able counsel finally contends that co-plaintiff Reisig, mineral lessee of Miss Gerene Moore, is a third person acquiring prior to recordation of this ratification and is therefore protected by the public records doctrine.
The essential basis of the public record doctrine is to prevent unrecorded claims of ownership from affecting third persons, who may rely on the conveyance records in dealing with immovable property. Blevins v. Manufacturers Record *211 Publishing Co., 235 La. 708, 105 So.2d 392, 414; McDuffie v. Walker, 125 La. 152, 51 So. 100. Here, the conveyance records reflected that Leah Moore through Dreibholz had quitclaimed any interest in the property to Ramos, and the co-plaintiff lessee was put fully on notice of Ramos's claim to the property. The unrecorded evidence of the authority of the agent (the power of attorney), and any possible defects in such authority to ratify, were matters which concerned the principal-seller and the purchaser, not any third person. Rownd v. Davidson, 113 La. 1047, 37 So. 965.

Conclusion
We therefore find that the prescription bars the plaintiffs' actions to annul the 1915 quitclaim deeds and that, for the reasons earlier stated, the plaintiffs' petition states no cause of action for ownership of the lands claimed.
We thus affirm the dismissal of the suit upon peremptory exception. The plaintiffs-appellants to pay all costs.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
Miller J., votes for a rehearing.
NOTES
[1] Leah Moore appeared through her agent, E. W. Dreibholz (per a then-unrecorded power of attorney).
[2] Since, if valid, these quitclaim deeds divested Miss Moore's ancestors in title of any interest in the property, we like the trial court pretermit discussion of 1908 judicial proceedings conducted by Ramos against the Successions of Robert and Charles Moore. After contradictory hearing, these 1908 proceedings resulted in judgment recognizing Ramos's title to a 50% interest in the lands, and it held that the Moore successions were without any interest in the subject lands. We should say at this point that we are indebted to the trial court for its excellent analysis of the titles, claims, and law applicable, in its thorough judgment sustaining the exceptions. Because of it, we do not feel it necessary to set forth in detail the wordings of the acquisition documents and the mesne steps which resulted in Gerene Moore's claim of title; our opinion thus indicates the essential facts only.
[3] Article 2221 pertinently provides: "In all cases, in which the action of nullity or of rescission of an agreement, is not limited to a shorter period by [a] particular law, that action may be brought within ten years. * * *"
[4] The petition also alleges the 1901 deed by which Ramos acquired the 50% interest and of Robert and Charles Moore. Article 15. It then alleges, despite the deed's unambiguous conveyance of "the lands and timber", that this 1901 sale was intended to convey the timber only, since intended to carry out the terms of an unrecorded 1901 contract which contemplated the sale of the timber only. Articles 15, 16. We do not reach this contention, since we find that the 1915 quitclaim deeds divested her ancestors of title.
[5] The quitclaim deed was signed: "Leah M. Moore by E. W. Dreibholz"; Dreibholz described himself in the acknowledgment "as the duly authorized agent of Leah M. Moore."