355 So.2d 277 (1978)
John Marshall REED et al., Plaintiffs-Appellees,
v.
Lee R. THOMAS, Jr., et al., Defendants-Appellants.
No. 13449.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1978.
Rehearing Denied March 1, 1978.
*278 Provosty & Sadler by Richard B. Sadler, Jr., Richard E. Chaudoir, Alexandria, for defendants-appellants.
Walter C. Dumas, Baton Rouge, Goff, Goff & Levy by A. K. Goff, Jr., Ruston, for plaintiffs-appellees.
Before BOLIN, PRICE and MARVIN, JJ.
En Banc. Rehearing Denied March 1, 1978.
MARVIN, Judge.
Defendants appeal from a judgment which avoided and annulled a deed from plaintiffs' ancestor to their ancestor on the grounds that plaintiffs' ancestor was fraudulently misled by defendants' ancestor into believing she was selling either a particular pine tree or the timber on the land.
The deed, executed in 1936, conveyed 160 acres in Bienville Parish for $75 which was paid in cash by defendants' ancestor. The deed recognized that back taxes were owed the State. The property was sold at tax sale to the State in 1921 before plaintiffs' ancestor inherited the property from her father. Neither plaintiffs or their ancestor *279 paid taxes on the property since that time. Defendants' ancestor paid the back taxes (an undetermined amount from this record) and redeemed the property from the State in 1938. Since that time, taxes have been paid by defendants.
Defendants contend that their pleas of liberative and acquisitive prescription should have been sustained below and that the lower court erred in finding fraud on the basis of testimony which was hearsay.
We agree that the evidence, excluding hearsay, does not support a finding of fraud on the part of defendants' ancestor, but even should we accept the lower court's findings, we hold that the plea of 10-years-liberative prescription under C.C. Art. 2221 should have been sustained, and for that reason reverse the judgment below and reject plaintiffs' demands.
Plaintiffs' ancestor was Henrietta Rainey Ellis. Defendants' ancestor was Lee R. Thomas, Sr. Henrietta Ellis moved from Louisiana sometime before 1952 and died in Flagstaff, Arizona, about 1959. Lee R. Thomas, Sr. died in Rapides Parish about 1972, his wife having predeceased him.
The deed, dated September 23, 1936, in authentic form, is signed by Mrs. Ellis by mark, by Mr. Thomas, and by a notary and two witnesses, one of which was Belton Blewer who is referred to in the testimony. None of these persons testified at the trial. The deed, valid on its face, was signed at the notary's office in Simpson, Vernon Parish, about 10 miles distant from Alco, Louisiana, where Mrs. Ellis was staying in 1936 with her daughter and son-in-law, Capus Boylston. Boylston and his wife rode with mrs. Ellis, Mr. Thomas and Mr. Blewer to the notary's office but remained in the automobile while the others executed the deed inside the office. After they returned to Alco, Mr. Boylston, his wife and his daughter, Annie Boylston Johnson, also a witness at the trial, assisted Mrs. Ellis in counting the $75 portion of the consideration which was paid in cash. Mr. Boylston and his daughter also testified to what was told them by Mrs. Ellis after the deed was executed. According to these witnesses, Mrs. Ellis said she placed great trust in Belton Blewer for whom she had once worked and was led by him to believe she was selling a particular pine tree for $75 when she signed the deed to her land.[1]
About a year after the deed was executed, Mrs. Ellis contacted an attorney in the parish seat of Bienville Parish. This attorneynow retired Judge Percy Brown of the Second Judicial Districtkept his file of this matter which included his handwritten notes of the consultation and of his cursory examination of the public records. Also contained in the file are copies of letters Judge Brown wrote to Mr. Thomas and to Mrs. Ellis. The letter to Mr. Thomas, dated September 30, 1937, was sent by registered mail and the postal receipt signed by Mr. Thomas is also in the file. This letter refers to the deed by date and by property description and states that Mrs. Ellis "simply sold the timber . . . [not the land, and was] promised whatever else the timber made above the seventy-five dollars." The letter demanded a "correction" of the deed and threatened a "suit to set this deed aside . . ." Judge Brown's letter to Mrs. Ellis of October 28, 1937, reads in part:

*280 "[Mr. Thomas] has not been in to see me. . . I did see Mr. Belton Blewer. . . I found out that it would cost quite a lot of money to redeem this property from tax sale. Mr. Thomas has not attended to this. As he has not come in and done anything . . . it will now be up to us to file suit. Let me know what you want me to do and . . . whether or not you have raised the money for the filing of suit."
The handwritten notes refer to the property being adjudicated to the State for taxes due in 1920 ($69) and for taxes due in 1921 ($42). The adjudication was in the name of J. Rainey, the deceased father of Mrs. Ellis, from whom she inherited in succession proceedings. Judge Brown's notes also include the statement that Mrs. Ellis "just found out error on or about September 1, 1937."[2] On August 17, 1938, Mr. Thomas redeemed the property from the State in the name of J. Rainey, and since that time he or his heirs have paid the taxes on the property.
In 1952, Mrs. Ellis and others conveyed a one-half mineral royalty interest in the property for $1.00 and other valuable considerations to a New Orleans attorney, since deceased. According to testimony of plaintiffs, this attorney was going to straighten out the title.
At a much later time, some of plaintiffs consulted an Arizona attorney and eventually employed a Ruston, Louisiana, lawyer who filed suit on November 13, 1973. The case was tried in 1975 and was decided in June 1977.
Clearly, the testimony by Mr. Boylston and his daughter as to what Mrs. Ellisa deceased personsaid to them (whether before or after September 1,1937) was hearsay and should not have been admitted over defendants' objection. See Miller v. Miller, 226 La. 273, 76 So.2d 3 (1954). There, the heirs of the decedent-mortgagor sought to annul a mortgage executed by the decedent before his death. The heirs relied on decedent's affidavit and his oral statements that the mortgage was a sham and that the money exhibited in the presence of the notary on the mortgage was decedent's own money and not that of the mortgagee. Over the mortgagee's objection, the trial court admitted this evidence. In its opinion and in a footnote (76 So.2d 4), the court stated:
"Even in cases where the hearsay is receivable as . . . admissions against interest by the deceased person, it is viewed as the weakest evidence . . . [footnote].
". . . Art. 2239 [La.C.C] grants. . . forced heirs the right to annul by parol evidence the simulated contracts [of their ancestor] . . . it does not sanction . . . hearsay testimony as a substitute for legal proof. The affidavit of decedent was inadmissible because it was hearsay and selfserving. The only declarations by a person since deceased, which are admissible as exceptions to the hearsay rule, are dying declarations, statements against interest and in rare instances pertaining to family history, relationship and pedigree . . ."
See also Spiers v. Davidson, 135 So.2d 540 (La.App. 2d Cir. 1961) where an affidavit by a deceased person was held inadmissible.
Judge Brown's notes were offered by defendants and were not objected to by plaintiffs. Likewise, defendants did not object to Judge Brown's letters when offered by plaintiffs. While these items are in evidence, they are nonetheless hearsay, except insofar as Judge Brown's testimony (Under oath and subject to cross-examination) as to the fact (not the truth) of the utterance by Mrs. Ellis. The evidentiary effect of the letters is somewhat different from the evidentiary effect of the handwritten notes because the letters were offered by plaintiffs while the notes were offered by defendants. See Merritt v. Wright, 19 La. Ann. 91 (1867). McCormick on Evidence, § 56 (2nd Ed. 1972). In any event, Judge Brown's testimony as to what he said and did as Mrs. Ellis' attorney in 1937, was admissible. His testimony as to Mrs. Ellis' statements to him, even if objected to as *281 hearsay, were admissible to show the fact of the utterances of the utterances and to explain his acting on her utterances as her attorney. McCormick on Evidence, § 246 (2nd Ed. 1972); State v. Launey, 335 So.2d 435 (1976). Insofar as his testimony was against the interest of Mrs. Ellis, it was admissible as an exception to the hearsay rule. Miller, supra; Spiers, supra.
Mrs. Ellis knew, as early as September 1, 1937, that she had sold not the timber (or a pine tree) on the land, but her rights to the land itself. Judge Brown's testimony also establishes that Mrs. Ellis knew that the property had been sold to the State for taxes before 1936 and that it would cost "quite a lot of money to redeem this property from the tax sale." Plaintiffs do not dispute defendants' ancestor's payment of the back taxes.
We agree with the lower court's finding that Mrs. Ellis was illiterate. We do not agree that the evidence is exceptionally convincing that defendants' ancestor fraudulently withheld from her the information that she was signing a deed.[3] The lower court placed emphasis on the fact that the $75 Mrs. Ellis received represents only 46 cents per acre. It is not shown how little or how much plaintiffs' ancestor paid to redeem the land from the State. We are shown only that the taxes for 1920 and 1921 averaged about $60 per year and according to Judge Brown in 1937, it would cost "quite a lot of money" to redeem the land. Considering the recitals in the deed and viewed in this light in 1936, the $75 consideration to Mrs. Ellis is not totally lacking in seriousness and in no event can it be said that the deed is a disguised donation omnium bonorum. C.C. Arts. 2239, 2444, 2464, 1497. See Owen v. Owen, 336 So.2d 782 (La.1976); Adams v. Trichel, 304 So.2d 740 (La.App. 2d Cir. 1974). A true donation is that which is purely gratuitous, which is made without condition and merely from liberality. C.C. Art. 1523.
Even should we agree, however, that the finding of fraud is supported by exceptionally strong and convincing evidence or even a preponderance, plaintiffs' demands are nonetheless prescribed by C.C. Art. 2221. Moore v. Shell Oil Company, 228 So.2d 205 (La.App. 3rd Cir. 1969); Fried v. Bradley, 219 La. 59, 52 So.2d 247 (1950). Through astute counsel, plaintiffs deftly contend that because of the assumed fraud, Mrs. Ellis did not know the content of the deed which she signed and under these circumstances, no contract ever existed because the latter three of the four requisites of C.C. Art. 1779 are lacking.[4] Plaintiffs argue that this conclusion is compelled by Arts. 1779 through 1818. The 2221 prescription for fraud, according to plaintiffs, applies only to cases where the content of the contract was known by the vendor. We cannot agree. See C.C. Arts. 1818, 1819, 1847, 1881, 1882, 1883, 1892, 1895, 1904, 2130, 2221, 2236.
Fraud is generally considered in the Code with error, violence and threats. Art. 1819. A signature to a deed procured at the point of a gun or the threat of death is, as it should be, vitiated by the threat. C.C. Arts. 1852, 1853. Whether the threatened party knows the content of the deed procured by threat is immaterial. As plaintiffs argue regarding fraud, property deeded or procured through threat is a theft. It is also robbery and may be armed robbery. C.C. Art. 1855 provides, however:
"No contract can be invalidated on an allegation of violence or threats, if it has been approved, either expressly after the violence or danger has ceased, or tacitly by suffering the time ["for prescription"] to elapse without causing it to be rescinded."
Art. 2221, referring to the nullity of agreements, reads in part:
"In all cases, in which the action of nullity or of rescission of an agreement, is not *282 limited to a shorter period by [a] particular law, that action may be brought within ten years.
"That time commences in case of violence, only from the day on which the violence has ceased; in case of error or deception, from the day on which either was discovered . . ."
We believe the question of liberative prescription, if any, to be applied in actions to annul or to void agreements, was settled in Fried, supra. Fried is cogently explained in Moore, supra, in an opinion authored by now Justice Tate.
In Moore, plaintiff brought suit to annul quitclaim deeds executed by her ancestors. Plaintiff's grounds to annul included the allegation that her ancestor had intended to convey only the timber and not the land itself and there was no consideration or cause for the deed. The 10-year liberative prescription of C.C. Art. 2221 was pleaded in bar. The court recognized Fried as the leading case under Art. 2221. In Fried, the deed by the plaintiffs' ancestors which they sought to annul was an absolute nullity because of the failure to follow succession and probate formalities required by Louisiana law. The Moore court stated:
"[Fried] held that this prescription [of C.C. Art. 2221] bars an attack on deeds for all nullities established in the interest of individuals, whether absolute or relative, that is, all nullities not in derogation of public order." 228 So.2d 209. Emphasis supplied.
The Moore court went on to state:
"Unlike absolute nullities in derogation of public order and good moralsi. e., those established in the interest of society nullities established to protect individual interests are subject to ratification, including tacitly through 2221's application by ten-year's inaction by the individual protected . . ." 228 So.2d 209.
See also Miller v. Roos, 189 La. 804, 180 So. 643 (1938).
Neither the object (C.C. Arts. 1779(3), 1883-1892) nor the purpose (C.C. Art. 1779(4), 1893-1900) of the deed under attack is unlawful or imprescriptible because in derogation of public order. The sale of rights to an immovable is recognized (C.C. Art. 2449) and is not forbidden by law (C.C. Art. 1892). Contracts of a victim of either violence, threat, or fraud, while reprehensible, are not absolutely null, but are voidable by the victim (Art. C.C. 1881) who is expressly granted an action to avoid or annul such a contract (C.C. Art. 1882). These laws were established for the protection of the interests of the individual victim, as distinguished from other laws established for the protection of society, to use the language of Moore, and are subject to being deemed tacitly ratified through 2221's application by ten-year's inaction by the individual protected. 228 So.2d 209.
For more than 35 years, Mrs. Ellis (and constructively, her heirs), knew that record title was in Thomas or his heirs. Whether she signed the deed through error or because of someone's fraudulent practices and whether she knew the content of the deed, her right (and that of plaintiffs) to avoid or annul the deed prescribed long before suit was filed in 1973.
Accordingly, the judgment below is reversed, defendants' exception and plea of liberative prescription of 10 years under C.C. Art. 2221 is sustained and plaintiffs' demands against defendants are rejected at her cost, including the cost of this appeal.

REVERSED AND RENDERED.

ON MOTION FOR REHEARING
Before BOLIN, PRICE, HALL, MARVIN and JONES, JJ.
PER CURIAM ON REHEARING APPLICATIONS:
As the opinion observes, the several plaintiffs were originally represented by a Ruston, Louisiana, law firm. After the record was lodged, three of the plaintiffs, including Annie Boylston Johnson, granddaughter of Henrietta Rainey Ellis, filed in this court a motion to enroll other counsel and discharge their original attorney. The other counsel was enrolled but the attempted ex *283 parte discharge of Ruston counsel was not recognized by this court.
Ruston counsel timely filed a comprehensive and detailed brief of 22 pages for all plaintiffs, ably and authoritatively arguing that the lower court should be affirmed. This brief noted that ". . . at a subsequent and proper time and in another court [Ruston counsel would] consider the question of substitution of another attorney and the discharge of these attorneys." The other counsel also timely filed a brief and orally argued.
The Ruston counsel now complains that he did not receive formal notice of the date of oral argument in this court and that his clientsthose plaintiffs who did not attempt to substitute counseldid not have the benefit of oral argument on appeal. Both counsel for plaintiffs-appellees make other arguments in separate motions for rehearing that contain nothing, however, which was not considered by us in our original determination.
The Ruston counsel is correct in stating that he was not notified of the date of oral argument. This failure was an inadvertent oversight. It is conceivable that in some cases an injustice might result by such failure. In this case, however, considering the very comprehensive briefs which were timely filed, the oral argument of the other counsel, the mutual legal positions of all plaintiffs, and the motions for rehearing by all plaintiffs, we find that no injustice resulted and decline to grant a rehearing solely to allow further oral argument.
Rehearing denied.
NOTES
[1] This testimony should be contrasted with the handwritten notes and letters written by an attorney who was consulted by Mrs. Ellis about one year after the deed was executed. These notes and letters are discussed infra. The trial court said the principal cause of Mrs. Ellis' agreement "was the sale of a tree, or perhaps timber, but not land."

The testimony of these witnesses is silent as to what defendants' ancestor said to plaintiffs' ancestor and at best, only implies his collusion with Belton Blewer. C.C. Art. 1847(9) reads:
"If the artifice be practiced by a party to the contract, or by another with his knowledge or by his procurement, it vitiates the contract; but if the artifice be practiced by a third person, without the knowledge of the party who benefits by it, the contract is not vitiated by the fraud, although it may be void on account of error, if that error be of such a nature as to invalidate it; in this case the party injured may recover his damages against the person practicing the fraud." See Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (1952) which requires exceptionally strong proof of fraud, more than a preponderance of the evidence. C.C. Art. 1848, "fraud . . . must be proved by him who alleges it."
[2] See footnote one.
[3] See C.C. Art. 1847(5) and (6).
[4] "Four requisites are necessary to the validity of a contract:

"1. Parties legally capable of contracting.
"2. Their consent legally given.
"3. A certain object, which forms the matter of agreement.
"4. A lawful purpose."